UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CITY OF HOLLYWOOD FIREFIGHTERS' PENSION FUND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITEDHEALTH GROUP INC., ANDREW WITTY, STEPHEN HEMSLEY, and BRIAN THOMPSON,<br><br>Defendants. | Civ. A. No. _____<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED**<br><br>**ECF CASE** |

Plaintiff City of Hollywood Firefighters' Pension Fund ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (i) regulatory filings made by UnitedHealth Group Inc. ("UnitedHealth" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases, presentations, and media reports issued by and disseminated by the Company; (iii) analyst and media reports concerning UnitedHealth; and (iv) other public information regarding the Company.

**INTRODUCTION**

1. This securities fraud class action is brought on behalf of all persons or entities that purchased shares of UnitedHealth's common stock between March 14, 2022, and February 27, 2024, inclusive (the "Class Period"). The claims asserted herein are alleged against UnitedHealth and certain of the Company's senior executives (collectively, "Defendants"), and arise under

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

2. UnitedHealth is a health care and well-being company comprised of two distinct and complementary businesses: Optum and UnitedHealthcare. UnitedHealthcare provides health insurance to individuals, employers, and small businesses and is the largest insurance provider in the United States. Optum provides healthcare-related services, including software solutions, payment services, and data analytics.

3. Optum is one of the two leading companies in the health insurance market for first-pass claims editing. First-pass claims editing, which is used to process all claims that a health insurer receives, determines whether a particular claim should be paid or rejected. Another important input for U.S. health insurance markets are Electronic Data Interchange ("EDI") clearinghouses, which enable the transmission of claims, remittances, and other critical information between payers and providers. Prior to the Class Period, UnitedHealth operated an EDI clearinghouse through Optum and UnitedHealthcare was its largest customer.

4. On January 6, 2021, UnitedHealth announced an agreement to acquire Change Healthcare ("Change") and integrate it into its existing Optum business. Change is a healthcare technology company that provides data solutions aimed at improving clinical decision making and simplifying payment processes across the healthcare system. Change provides the market leading product in claims editing and also operated the largest EDI clearinghouse in the United States. As a result, Change has access to a significant amount of customer sensitive information ("CSI") and claims data. In addition, some of Change's customers grant "secondary-use rights" to this data, giving Change the right to use the data for purposes beyond providing EDI clearinghouse service.

5.      In response to the January 6 announcement, on February 24, 2022, the U.S. Department of Justice ("DOJ") filed a lawsuit challenging UnitedHealth's acquisition of Change. The DOJ alleged that the proposed acquisition would violate antitrust laws because the integration of Change and Optum would give UnitedHealth unparalleled access to information regarding nearly every health insurer, as well as health data on every single American. UnitedHealth assured the DOJ, investors and customers that Optum would "maintain robust firewall processes" to prevent CSI from being shared between Optum and UnitedHealthcare.

6.      In May 2022, prior to the start of the antitrust trial, UnitedHealth created a new firewall policy for Optum and UnitedHealthcare which addressed the sharing of CSI following the acquisition. This firewall policy was issued to specifically address the Change acquisition and designed to keep Optum and UnitedHealthcare data separate post-merger.

7.      In September 2022, the DOJ tried its antitrust lawsuit against UnitedHealth in the United States District Court for the District of Columbia. The court in the antitrust action ultimately permitted the acquisition, repeatedly crediting UnitedHealth's firewall policy and commitment to preventing the sharing of data between UnitedHealthcare and Optum as the rationale for allowing the deal to proceed. In the decision, the court explained that UnitedHealth "has maintained a corporate antitrust firewall that expressly prohibits the sharing of CSI between business units" and found that the "widespread use of firewalls in the industry, United[Health]'s history of compliance with its own firewalls, the customer contracts, and the convincing testimony from senior executives about United[Health]'s practices and incentives-weighs strongly against the Government's position."

8.      The truth emerged on February 27, 2024, when the *Wall Street Journal* reported that the DOJ had re-opened its antitrust investigation into UnitedHealth. In that article, the public

3

learned for the first time that the DOJ was investigating the relationships between the Company's various segments, including Optum. As a result of this disclosure, the price of UnitedHealth stock declined by $27 per share, erasing nearly $25 billion in shareholder value.

9. UnitedHealth was aware of the DOJ investigation since at least October 2023. Instead of disclosing this material investigation to investors or the public, UnitedHealth insiders sold more than $120 million of their personally held UnitedHealth shares. In the four months between learning about the DOJ investigation and the investigation becoming public, UnitedHealth's Chairman Stephen Hemsley sold over $102 million of his personally held UnitedHealth shares and Brian Thompson, the CEO of UnitedHealthcare, sold over $15 million of his personally held UnitedHealth shares.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11. Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). UnitedHealth is headquartered in Minnetonka, Minnesota, which is situated in this District, conducts substantial business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but

not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

**A.     Plaintiff**

12.    Plaintiff City of Hollywood Firefighters' Pension Fund is a pension fund established for the benefit of the current and retired firefighters of the City of Hollywood, Florida. Plaintiff manages over $300 million in assets for its beneficiaries.  As indicated on the Certification submitted herewith, Plaintiff purchased UnitedHealth common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

**B.     Defendants**

13.    Defendant UnitedHealth is an American multinational health insurance and services company based in Minnetonka, Minnesota.  The Company's headquarters are located at 9900 Bren Road East, Minnetonka, Minnesota.  The Company's common stock trades on the NYSE under ticker symbol "UNH."  As of April 30, 2024, UnitedHealth had over 920 million shares of common stock outstanding, owned by hundreds or thousands of investors.

14.    Defendant Andrew Witty ("Witty") is, and was at all relevant times, Chief Executive Officer of UnitedHealth.

15.    Defendant Stephen Hemsley ("Hemsley") is, and was at all relevant times, Chairman of the Company's Board of Directors.

16.    Defendant Brian Thompson ("Thompson") is, and was at all relevant times, Chief Executive Officer of UnitedHealth's insurance segment, UnitedHealthcare.

17.     Defendants Witty, Hemsley, and Thompson are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with UnitedHealth, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

### DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

18.     The Class Period begins on March 14, 2022, the first trading day after UnitedHealth filed its Answer to the allegations in the complaint filed by the DOJ in the United States District Court for the District of Columbia.  In response to the DOJ's concerns, UnitedHealth publicly "agreed to make binding commitments to its customers and the Government" to "maintain its robust firewall processes—and extend them to Change's business—to protect sensitive customer data and provide information to customers to allow them to verify those firewall processes."

19.     A March 17, 2022, document titled "Benefits of Combination with Change Healthcare" that was posted on the Company's website addressed the DOJ's lawsuit and stated that "Optum will maintain robust firewall processes and extend them to Change Healthcare's business—to protect sensitive customer data and provide information to customers to allow them to verify those firewall processes."  UnitedHealth also avowed that Optum "invests extraordinary

6

time, money, and resources into safeguarding [CSI] and keeping it walled off from UnitedHealthcare" and that "UnitedHealth Group's existing firewalls and data-security policies prohibit employees from improperly sharing external-customer CSI."

20.   On April 5, 2022, UnitedHealth filed a press release with the SEC on Form 8-K. In the press release, UnitedHealth stated that the DOJ's lawsuit challenging the Change acquisition was "meritless."

21.   Then, in May 2022, UnitedHealth adopted a new firewall policy relating to the proposed acquisition of Change. The policy explicitly addressed the sharing of customers' CSI between Optum and UnitedHealthcare and stated:

- "The disclosure of External Customer CSI to [UnitedHealth] business units that are competitors of such External Customers is strictly prohibited";

- "The use of External Customer CSI to benefit [UnitedHealth] business units that are competitors of such External Customers is strictly prohibited";

- UnitedHealth employees "may not access External Customer CSI unless such access is necessary to perform their job responsibilities";

- "External Customer CSI shall be logically separated from other [UnitedHealth] business unit data within Electronic Data Sites"; and

- "No employees of other [UnitedHealth] business units that are competitors of an External Customer shall have access to the location where External Customer CSI is stored within such Electronic Data Slides."

22.   On June 14, 2022, UnitedHealth published its annual Sustainability Report. In the report, the Company declared that it was "focused" on "maintaining data privacy and cybersecurity" and recognized its "obligation" to "protect the information of all those we serve."

7

UnitedHealth continued to assert that it was "required to safeguard personal information reasonably and appropriately" and that the "[p]rimary tools used to fulfill these obligations are cybersecurity and data privacy programs."  Further, the Sustainability Report explained that UnitedHealth "manages a robust Information Security Risk Management and Privacy Program that improves its ability to make risk-informed decisions by conducting systematic and structured reviews of information security risks."  The results of these internal audits are then "communicated to executive leadership and presented to the Audit and Finance Committee of the Board of Directors quarterly."

23.  Similarly addressing the Company's data protection policies in the Sustainability Report, UnitedHealth explained that its "data protection policy applies to all lines of business and subsidiaries" and that its "Code of Conduct outlines our commitment to protecting the information entrusted to us.  Supported by a comprehensive set of principles, our policies and programs describe appropriate uses of data and the safeguards that protect the confidentiality and integrity of our systems."  These policies include "enterprise information security policies," "privacy and data protection policies," and "an incident management program that encompasses cybersecurity, privacy and compliance obligations."

24.  On November 29, 2022, UnitedHealth held its annual Investor Conference, materials for which were publicly released the prior day, on November 28.  The Conference Book highlighted the Company's "long-established firewalls and strong legal, reputational, ethical and financial incentives to protect patient and customer information."

25.  On June 1, 2023, Defendant Witty represented UnitedHealth at the Bernstein Strategic Decisions Conference.  During the conference, Defendant Witty acknowledged the Company's firewall requirements, noting that UnitedHealth was focused on improving

performance by "exploiting the core synergy between Optum and UnitedHealthcare as much as we possibly can appropriately, of course, given the firewall requirements [that] are needed there."

26. Throughout the Class Period, UnitedHealth's Code of Conduct also stated that Optum's "provider businesses contract with competitors of UnitedHealthcare and may receive competitively-sensitive information, which must be protected, and sharing the data requested without review and approval by legal counsel could be a form of unfair competition."

27. The statements set forth above in ¶¶18-26 were materially false and misleading. In truth, UnitedHealth never established proper firewalls between Optum and UnitedHealthcare as required by its own policy, and as it told the court in the antitrust action, the DOJ and investors it would do. Firewalls were never properly created for certain business applications. Despite assurances to the contrary, there was never a meaningful technological separation between Optum and UnitedHealthcare that prevented the sharing of CSI.

## THE TRUTH EMERGES

28. On February 27, 2024, the *Wall Street Journal* reported that the DOJ had re-opened its antitrust investigation into UnitedHealth. In that article, the public learned for the first time that the DOJ was investigating the relationships between the Company's various segments, including Optum. As a result of these disclosures, the price of UnitedHealth stock declined by $27 per share.

29. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## LOSS CAUSATION

30. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. This

9

artificially inflated the price of UnitedHealth's common stock and operated as a fraud or deceit on the Class (as defined below). Later, when it was disclosed to the market that an antitrust investigation was again launched against Defendants, the price of UnitedHealth's stock fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of UnitedHealth stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired the publicly traded common stock of UnitedHealth during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, directors, and officers of UnitedHealth and their families and affiliates.

32. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of January 31, 2024, UnitedHealth had over 921 million shares of common stock outstanding, owned by hundreds or thousands of investors.

33. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    (a)    Whether Defendants violated the Exchange Act;

    (b)    Whether Defendants omitted and/or misrepresented material facts;

(c) Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e) Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f) Whether Defendants' conduct impacted the price of UnitedHealth common stock;

(g) Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h) The extent of damage sustained by Class members and the appropriate measure of damages.

34. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

35. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

36. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Joinder of all Class members is impracticable.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

37. UnitedHealth's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

38. Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of UnitedHealth who knew that the statement was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## PRESUMPTION OF RELIANCE

39. At all relevant times, the market for UnitedHealth's common stock was an efficient market for the following reasons, among others:

(a) UnitedHealth common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, UnitedHealth filed periodic public reports with the SEC and NYSE;

(c) UnitedHealth regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d) UnitedHealth was followed by securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain

customers of their respective brokerage firm(s). Each of these reports was publicly available and entered the public marketplace.

40. As a result of the foregoing, the market for UnitedHealth common stock promptly digested current information regarding UnitedHealth from all publicly available sources and reflected such information in the price of UnitedHealth common stock. Under these circumstances, all purchasers of UnitedHealth common stock during the Class Period suffered similar injury through their purchase of UnitedHealth common stock at artificially inflated prices and the presumption of reliance applies.

41. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). The Class's claims are grounded on Defendants' material omissions of information that was necessary to render Defendants' statements not misleading. Defendants' repeated references to the Company's firewall processes created an obligation on Defendants to disclose the material deficiencies in those firewalls which, among other things, did not prevent the sharing of CSI between divisions of the Company.

## **CLAIMS FOR RELIEF**

## **COUNT I**

### **For Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
### **Against All Defendants**

42. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43. During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase UnitedHealth common stock at artificially inflated prices.

44. Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for UnitedHealth common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

45. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

46. During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47. Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal UnitedHealth's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

48. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for UnitedHealth common stock. Plaintiff and the Class would not have purchased the Company's common stock at the prices they paid, or at all,

had they been aware that the market prices for UnitedHealth common stock had been artificially inflated by Defendants' fraudulent course of conduct.

49. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

50. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

51. Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of UnitedHealth within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about UnitedHealth, the Individual Defendants had the power and ability to control the actions of UnitedHealth and its employees. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

53. WHEREFORE, Plaintiff prays for judgment as follows:

    A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D. Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

54. Plaintiff demands a trial by jury.

DATED: May 14, 2024

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

*/s/ Gregg M. Fishbein*
Gregg M. Fishbein, MN No. 202009
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 596-4044
Facsimile: (612) 339-0987
gmfishbein@locklaw.com

*Liaison Counsel for Plaintiff City of Hollywood Firefighters' Pension Fund*

Hannah Ross
Avi Josefson
Scott R. Foglietta
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Plaintiff City of Hollywood Firefighters' Pension Fund*

Robert D. Klausner
**KLAUSNER, KAUFMAN, JENSEN  & LEVINSON, P.A.**
7080 Northwest 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for Plaintiff City of Hollywood Firefighters' Pension Fund*

# CERTIFICATION PURSUANT TO
# THE FEDERAL SECURITIES LAWS

I, Jason Rosner, on behalf of City of Hollywood Firefighters' Pension Fund ("Hollywood Firefighters"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Chairman of Hollywood Firefighters. I have reviewed the complaint with Hollywood Firefighters' legal counsel. Based on legal counsel's knowledge and advice, Hollywood Firefighters has authorized the filing of the complaint.

2. Hollywood Firefighters did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Hollywood Firefighters is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Hollywood Firefighters' transactions in the UnitedHealth Group Inc. securities that are the subject of this action are set forth in the chart attached hereto.

5. Hollywood Firefighters has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification:

*City of Hollywood Firefighters' Pension Fund v. Inspire Medical Systems, Inc.*,
No. 23-cv-3884 (D. Minn.)
*City of Hollywood Firefighters' Pension Fund v. Atlassian Corporation*,
No. 23-cv-519 (N.D. Cal.)

6. Hollywood Firefighters has sought to serve as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motion for appointment as lead plaintiff or was not appointed lead plaintiff:

*Vazquez v. Masimo Corporation*, No. 23-cv-1546 (S.D. Cal.)

7. Hollywood Firefighters is currently seeking to serve as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

*Skolnick v. Evolution AB (publ)*, No. 24-cv-326 (E.D. Pa.)

8. Hollywood Firefighters will not accept any payment for serving as a representative party on behalf of the Class beyond Hollywood Firefighters' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 3 day of May, 2024.

_____
Jason Rosner, Chairman
*City of Hollywood Firefighters' Pension Fund*

**City of Hollywood Firefighters' Pension Fund**
**Transactions in UnitedHealth Group Inc.**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 6/6/2022 | 1,520 | 491.5366 |
| Purchase | 6/13/2022 | 480 | 471.2224 |
| Purchase | 6/30/2022 | 130 | 514.3200 |
| Purchase | 11/15/2022 | 270 | 502.5000 |
| Purchase | 12/19/2022 | 230 | 524.0250 |
| Purchase | 12/19/2022 | 30 | 524.2467 |
| Purchase | 1/13/2023 | 270 | 508.1634 |
| Purchase | 1/23/2023 | 180 | 483.8750 |
| Purchase | 1/23/2023 | 85 | 483.8660 |
| Purchase | 1/31/2023 | 480 | 496.5596 |
| Purchase | 3/13/2023 | 10 | 467.1519 |
| Purchase | 3/13/2023 | 100 | 462.6900 |
| Purchase | 3/13/2023 | 200 | 463.0646 |
| Purchase | 9/12/2023 | 240 | 482.1700 |
| Purchase | 9/22/2023 | 550 | 506.9224 |
| Sale | 7/24/2023 | (600) | 507.7750 |