**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| CITY OF HOLLYWOOD FIREFIGHTERS' PENSION FUND, individually and on behalf of all others similarly situated, | Case No. 0:24-cv-01743-JMB-DTS |
| *Plaintiffs,* | |
| v. | **DEFENDANTS'[1] OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR PARTIAL RELIEF FROM THE PSLRA DISCOVERY STAY** |
| UNITEDHEALTH GROUP INC., ANDREW WITTY, STEPHEN HEMSLEY, and BRIAN THOMPSON, | |
| *Defendants.* | |

**INTRODUCTION**

The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes a *mandatory* stay on discovery until a defendant's motion to dismiss is resolved. Congress expressly found, among other things, that a mandatory stay was necessary to prevent coercive settlements or fishing expeditions by securities plaintiffs who "file frivolous lawsuits in order to conduct discovery in the hopes of finding a sustainable claim not alleged in the complaint." S. Rep. No. 104–98, at 14 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 693. The PSLRA discovery stay contains no exception for documents already produced in a government investigation. And courts in this District and around the

---

[1] This Opposition is brought by Defendants UnitedHealth Group Incorporated, Andrew Witty, and Stephen Hemsley. Defendant Brian Thompson is deceased. In addition, Plaintiff's Motion seeks relief from the PSLRA discovery stay as to documents produced by UnitedHealth Group Incorporated.

country routinely enforce the mandatory stay against plaintiffs trying to chip away at its protections.

Now, just weeks before Defendants file their motion to dismiss, Plaintiff seeks to lift the mandatory stay and access whatever documents UnitedHealth Group Incorporated ("UHG") has produced to the U.S. Department of Justice ("DOJ") in a purported antitrust investigation.  Plaintiff does not know the subject matter of the purported investigation; it does not know the categories or subject matter of any documents (if any) UHG has produced to the DOJ; and it cannot say with any specificity why such documents of unknown scope and unknown subject matter would even be relevant to its case. Nonetheless, Plaintiff insists that if the Court does not take the extraordinary step of lifting the stay, Plaintiff will somehow be at an "information disadvantage" relative to the DOJ that "limits" its "ability to assess its litigation strategy."  Mot. at 3.[2]

Plaintiff's formulaic recitation of the elements cannot substitute for the specific showing of undue prejudice and particularized discovery needed to justify lifting the PSLRA's mandatory stay.  Plaintiff's motion fails on both grounds.

First, Plaintiff cannot show undue prejudice arising from the purported DOJ antitrust investigation.  Plaintiff's assertion that it is prejudiced by an "informational disadvantage" relative to the DOJ makes no sense, and it is contrived in service of an effort to obtain documents to which Plaintiff is not entitled.  The DOJ is not a party to this litigation and has filed no claims against UHG.  Plaintiff cannot plausibly assert that it

---

[2] All citations to Mot. herein refer to Lead Plaintiff's Memorandum of Law in Support of Motion for Partial Relief from the PSLRA Discovery Stay (ECF No. 62).

needs to be on an even footing with the DOJ in order to make strategic decisions in this case—particularly given that Plaintiff cannot demonstrate that any documents that might have been produced in that investigation would be relevant to its claims here. Nor can Plaintiff identify any conceivable threat to its ability to recover even if the DOJ were to bring suit. UHG is a multi-billion-dollar company, and Plaintiff is not competing with the DOJ for scarce resources or anything else. Plaintiff has therefore failed to demonstrate undue prejudice.

Second, as an independent ground for denying Plaintiff's motion, the scope of discovery Plaintiff seeks is not particularized; it simply seeks everything UHG produced to the DOJ in the purported antitrust investigation, whether or not such materials are relevant to Plaintiff's claims. Indeed, the sweeping nature of the request underscores that Plaintiff does not know what the DOJ might be investigating, further undermining its contrived claim that it needs documents to make strategic decisions.

Plaintiff's real motive is transparent. Defendants will file their Motion to Dismiss imminently. *See* Stipulation Regarding Amended Schedule and Word Limit for Motion to Dismiss Briefing (ECF No. 58). Plaintiff's Motion is an attempt to get out ahead of that Motion to Dismiss in search of a better claim. This is precisely what Congress determined should not be accorded to securities fraud plaintiffs. The Court should deny the Motion.

**FACTUAL BACKGROUND**[3]

In February 2024, a Wall Street Journal ("WSJ") article reported that the DOJ had opened an antitrust investigation of UHG.  Compl. ¶¶14, 135.  Following the article's publication, UHG's stock price dropped modestly.  *Id.* at ¶¶135–36.  The article described the antitrust investigation only at a high level, and there is no evidence that any such investigation relates to any of the issues that are the subject of this suit: a purported "upcoding scheme" in connection with UHG's HouseCalls program and UHG's internal data firewalls.  The DOJ has not filed any action against UHG.

With Defendants' Motion to Dismiss imminent, Plaintiff filed this Motion seeking to partially lift the discovery stay, seeking **all** documents that UHG has produced to the DOJ, apparently in a last-ditch effort to drum up support for yet another amended complaint.  Plaintiff does not identify any relevant subset of those documents.  Nor does it offer any specific evidence why delaying its ability to conduct discovery would threaten its ability to recover from UHG—one of the country's largest companies—or impede its ability to develop its case against Defendants in the future.

**ARGUMENT**

In enacting the PSLRA, Congress specifically restricted the ability of plaintiffs to obtain discovery during the pendency of a motion to dismiss in securities fraud suits:

---

[3] Plaintiff regurgitates large sections of the Complaint, Mot. at 3–9, apparently hoping to convince the Court that it is strong.  The strength of Plaintiff's claims is irrelevant to the PSLRA's mandatory stay, however.  Defendants will address the insufficiency of the Complaint in its soon-to-be-filed Motion to Dismiss, not in this Opposition.

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that ***particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party***.

15 U.S.C. § 78u-4(b)(3)(B) (emphasis added).  The PSLRA, including this provision, was intended as a "check against abusive litigation" meant to coerce settlement.  *Trustees of Welfare and Pension Funds of Local 646A – Pension Fund v. Medtronic PLC*, 726 F. supp. 3d 938, 960 (D. Minn. 2024).  The very purpose of the discovery restriction was to prevent "fishing expedition[s]."  *In re Grand Casinos, Inc. Sec. Litig.*, 988 F. Supp. 1270, 1271 (D. Minn. 1997) (citing S. Rep. No. 104–98, at 14 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 693).

Yet that is precisely what Plaintiff seeks to engage in by lifting the stay.  Plaintiff does not argue that lifting the discovery stay is necessary to preserve evidence.  Therefore, the questions for the Court are whether Plaintiff has sufficiently demonstrated that: (i) it would be unduly prejudiced without lifting the stay, and (ii) the request for discovery is particularized.  *See id.*; *see also Lusk v. Life Time Fitness, Inc.*, 2015 WL 2374205, at *2 (D. Minn. May 18, 2015).[4]  The answer to both questions is "no."

---

[4] Plaintiff asserts that a third element—"exceptional circumstances"—is met when the documents at issue have already been produced to other entities. Mot. at 11. But Plaintiff cannot show exceptional circumstances simply by pointing to discovery in an allegedly related matter. Parallel investigations are common and far from "exceptional," and courts have rejected any categorical rule that such investigations entitle securities plaintiffs to early discovery. *See infra*. Further, even if Plaintiffs were correct that production would not be costly to Defendants, this is not a sufficient rationale to lift the PSLRA stay. Plaintiff must affirmatively demonstrate undue prejudice. *See In re Smith Barney Transfer Agent Litig.*, 2006 WL 1738078, at *3 (S.D.N.Y. June 26, 2006) ("The proper inquiry under the

## A. Plaintiff Does Not Face Undue Prejudice

Under the plain language of the PSLRA, discovery before or during the pendency of a motion to dismiss is allowed only where it is *necessary* to prevent undue prejudice to a plaintiff. 15 U.S.C. § 78u-4(b)(3)(B). While this does not require "irreparable harm," it still demands "improper or unfair treatment." *Lusk*, 2015 WL 2374205, at *2 (citing *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009)). And "improper or unfair treatment" does not arise merely when the PSLRA stay prevents plaintiffs from digging for discovery materials that "*might* bolster" their underlying claims. *See Calleros v. FSI Int'l Inc.*, 2012 WL 10918867, at *2 (D. Minn. Sept. 17, 2012) (emphasis added).

Congress obviously understood that many securities fraud cases would be filed where there were related government investigations or other government or private actions, yet it declined to adopt an exception for discovery produced in those proceedings. *In re Refco, Inc. Sec. Litig.*, 2006 WL 2337212, at *2 (S.D.N.Y. Aug. 8, 2006) ("Whether PSLRA plaintiffs should be subjected to a discovery stay while other parties, who are bringing claims under other causes of action, are not subjected to a stay is a question for Congress, and one that Congress has answered."). And, if Congress intended to create a categorical exception to the mandatory stay, it could do so at any time. It has remained silent.

---

PSLRA is whether the plaintiff would be unduly prejudiced by the stay, not whether the defendant would be burdened by lifting the stay."). Plaintiff has failed to do so. *See infra.*

Unable to identify any categorial exception, Plaintiff argues that it will be "unduly prejudiced" by being at an "informational disadvantage" relative to the DOJ that "prevents Plaintiff from making informed decisions about its litigation strategy in a rapidly shifting landscape." *See* Mot. at 14–16. But there is no substance behind these formulaic words, and Plaintiff does not offer a single example of any specific, identifiable prejudice. Courts reject attacks on the stay based only on "generic justifications" that "are devoid of material particulars" and that "if accepted as sufficient, would largely overcome the stay in any shareholder case such as this one." *Calleros*, 2012 WL 10918867, at *2 (declining to lift stay).

More than that, Plaintiff's rationale makes no sense on its face. Plaintiff offers nothing to demonstrate that the purported DOJ investigation concerns the issues raised by the Complaint. All Plaintiff knows is that the WSJ reported an "antitrust" investigation, which could mean almost anything. Even leaving that aside, Plaintiff fails to explain *why* it needs to be on an informational par with a DOJ *antitrust* investigation to make informed strategic decisions in this *securities fraud* case. Nor does it explain what "informed strategic decisions it needs to make," particularly with the Motion to Dismiss pending, and how any such decisions would be informed by documents produced to the DOJ. The issue certainly cannot be that the parties are competing for scarce resources. UHG is a multi-billion-dollar company. *See Lusk*, 2015 WL 2374205, at *2 (noting undue prejudice can be satisfied where a defendant's resources are dwindling and fees and penalties involved in resolving the regulatory action will leave plaintiffs with claims against defendants "'who

no longer have anything or at least much to offer'") (quoting *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002)).

Numerous courts have declined to lift the stay under similar circumstances. *See, e.g.*, *Rampersad v. Deutsche Bank Sec. Inc.*, 381 F. Supp. 2d 131, 133 (S.D.N.Y. 2003) (holding there is "no authority" for categorical exception to PSLRA where information sought has "already been provided to a government agency"); *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 39 (D.D.C. 2005) (no prejudice by not having access to documents produced to government); *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 129–31 (S.D.N.Y. 2003) (denying plaintiffs' motion to lift PSLRA stay even though same documents were previously provided to DOJ and various French agencies).

Plaintiff cites a few scattered, out-of-district cases to suggest that courts may lift the PSLRA stay to order production of documents already provided to regulatory agencies because plaintiffs would otherwise somehow fall behind the regulators. *See* Mot. at 11–12, 15–16. But this District has rejected attempts by plaintiffs to argue undue prejudice simply because they might "fall behind." *See Lusk*, 2015 WL 2374205, at *2 (rejecting request to lift the stay because plaintiff "has not shown that no adequate remedy exists absent the lifting of the stay"); *Calleros,* 2012 WL 10918867 at *2 (declining to lift the stay where plaintiff offered only "generic justifications" for doing so). In any case, as noted, Plaintiff makes no showing of how it would "fall behind."

*Lusk* is instructive. *See* 2015 WL 2374205, at *1-2. There, the plaintiff stockholder, in an action asserting that proxy materials supporting the merger were false or misleading, sought to lift the PSLRA discovery stay to depose the defendant company's CEO and to

receive certain categories of documents. *Id.* at *1. The plaintiff asserted that if the PSLRA stay were not lifted, he would be unduly prejudiced because the stockholder vote central to the litigation was less than four weeks away at the time, and stockholders would be uninformed absent discovery into alleged disclosure deficiencies. *Id.* at *1–2. The court rejected the plaintiff's argument because his preliminary injunction motion was already pending before the court and the plaintiff could not demonstrate that relief would be unavailable even if an uninformed vote went forward. *Id.* at *2–3. Plaintiff's case is even less compelling; it identifies no exigent circumstances and fails to justify its purported concern about needing to stay even with the DOJ to make strategic decisions. *See Calleros*, 2012 WL 10918867, at *2.

Plaintiff cites only two cases from this District: *In re Grand Casinos, Inc. Sec. Litig.* and *Ameriprise Fin. Servs., Inc. & Univision Commc'ns Inc.,* both of which are inapposite. 988 F. Supp. 1270, 1272 (D. Minn. 1997); 2009 WL 10710599 at *3 (D. Minn. Jan. 9, 2009). The court lifted the PSLRA stay in the former for the sole purpose of serving document subpoenas to ensure document preservation. *In re Grand Casinos*, 988 F. Supp. at 1273. And in the latter, the court declined to lift the PSLRA stay. *Ameriprise*, 2009 WL 10710599 at *3.

In any event, nearly all the cases Plaintiff cites arose under markedly different circumstances, generally involving a question of prejudice to plaintiff's ability to recover not remotely at issue here. *See, e.g., In re WorldCom*, 234 F. Supp. 2d at 306 (lifting the stay because the company went bankrupt and plaintiff "would essentially be the only major interested party . . . without access to documents that currently form the core of those

9

proceedings"); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2002 WL 31845114, at *1–2 (S.D. Tex. Aug. 16, 2002) (lifting the stay for bankruptcy proceedings); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 251–52 (D. Md. 2004) (lifting the stay where defendant's corporate restructuring could compromise document retention and settlement negotiations).[5]

Finally, even if somehow relevant, Plaintiff has not demonstrated that any DOJ action is imminent.  In support, Plaintiff cites only a single article by STAT News to the effect that the DOJ is interviewing two former UHG physicians.  *See* Ex. A to Declaration of Robert R. Henssler Jr. (ECF No. 63).  Even that article, however, caveats that it is "unclear if the new interviews confirmed by STAT are part of [the DOJ's purported antitrust investigation] or a separate inquiry."  *Id.*  Moreover, even if the DOJ was pursuing a few interviews, that does not come close to demonstrating that the subject of any DOJ investigation relates to Plaintiff's securities fraud claim, that any materials produced to the

---

[5] *See also, e.g.*, *In re Massey Energy Co. Sec. Litig.*, 2011 WL 4528509, at *6 (S.D. W. Va. Sept. 28, 2011) (lifting the stay because, in addition to investigations, the company's acquisition "constitute[d] extraordinary circumstances" presenting "substantial risk of undue prejudice"); *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 183 (S.D.N.Y. 2004) (lifting the stay where defendant had already agreed to a $63.5 million settlement with regulators and thus plaintiff would have been the "only interested party without access to those documents"); *Pension Trust Fund for Operating Engineers v. Assisted Living*, 943 F. Supp. 2d  913, 916 (lifting the stay in part because defendant was "in the midst of being acquired"); *In re Delphi Corp.*, 2007 WL 518626, at *7 (E.D. Mich. Feb. 15, 2007) (lifting the stay where there was a related bankruptcy proceeding, several other defendants had already consented to "substantial money judgments," and other creditors had access to the documents, so plaintiff faced "being left with nothing"); *Singer v. Nicor, Inc.*, 2003 WL 22013905 at *1–2 (N.D. Ill. Apr. 23, 2003) (lifting the stay where multiple state agencies had already requested that the regulator impose a $27 million fine onto the company and the SEC had also signaled its intent to bring an injunction).

DOJ would even be relevant, or that the DOJ will imminently bring claims that somehow impair Plaintiff's ability to make strategic decisions. Plaintiff has not come close to demonstrating undue prejudice.

### B. Plaintiff's Request Is Not Sufficiently Particularized

As a separate basis for denial, Plaintiff's discovery requests do not meet the particularity standard. "To satisfy the requirement of particularized discovery, [p]laintiffs must 'adequately specify the target of the requested discovery and the types of information needed to relieve that burden.'" *In re Asyst Techs., Inc. Deriv. Litig.*, 2008 WL 916883 at *1 (N.D. Cal. Apr. 3, 2008) (quoting *In re Lernout & Hauspie Secs. Litig.*, 214 F. Supp. 2d 100, 108 (D. Mass. 2002)). That means a party seeking to lift the stay must identify a narrow category of documents relevant to its specific claims. *In re Am. Fund. Sec. Litig*, 493 F. Supp. 2d 1103, 1107 (C.D. Cal. 2007); *Faulkner v. Verizon*, 156 F. Supp. 2d 384, 404 (S.D.N.Y. 2001) (rejecting plaintiff's claim of "particularized discovery" because the request was not limited to information "probative of the nature and timing" of plaintiff's suit against defendant). Moreover, "particularized" is not the same as "identifiable." *See In re Under Armour Sec. Litig.*, 2021 WL 633373, at *3 (D. Md. Feb. 18, 2021) (quoting *Royal Ahold*, 220 F.R.D. at 250).

Here, Plaintiff seeks copies of **all** documents UHG has produced to the DOJ. *See* Mot. at 17. In support, Plaintiff asserts in various formulations that this is a "clearly defined universe" or "clearly defined document set[]." Mot. at 13–14. To the contrary, there is nothing "clearly defined" about it. It is limited by neither subject matter nor time period, and even assuming any investigation covered issues relevant to this case (which Plaintiff

11

has not established), the set of **all** documents that have been produced to the government would self-evidently constitute a larger universe than Plaintiff could obtain even through regular discovery.  This is the opposite of "particularized," and courts deny requests to lift the PSLRA stay when the "universe [of documents] may be extremely large and is entirely undifferentiated."  *See New York State Teacher's Ret. Sys. v. Fremont Gen. Corp.*, 2009 WL 10675265, at *2 (C.D. Cal. Nov. 5, 2009) (rejecting request for documents produced in other proceedings); *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 39 (D.D.C. 2005) (rejecting request for documents produced in connection with governmental and regulatory investigations because such documents "are voluminous and possibly irrelevant to the claims likely to be raised in the Consolidated Complaint").[6]

Finally, in this regard, whether UHG can easily comply with the request, Mot. at 11–12, is beside the point.  The extent of the burden on UHG, despite Plaintiff's best effort to make it part of the test, is not relevant.  *See supra* at n.4.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

---

[6] Even among the handful of scattered cases Plaintiff identifies in which a court has found a request for clone discovery of productions to the government particularized, several involved limitations not present in Plaintiff's request.  *See e.g. Royal Ahold*, 220 F.R.D. at 249–50 (requesting documents that excluded witness statements and interview notes); *Massey Energy*, 2011WL 4528509 at *5 (requesting documents specifically pertaining to the safety of Massey's mines); *Singer*, 2003 WL 22013905 at *1 (lifting the stay for documents specifically concerning accounting practices and financial restatements).

Dated: February 18, 2025                    /s/ Timothy Perla

**WILMER CUTLER PICKERING HALE AND DORR LLP**

Michael G. Bongiorno
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Michael.Bongiorno@wilmerhale.com
Phone: 212-230-8800
Facsimile: 212-230-8888

Timothy J. Perla
Sonia Sujanani
Dan Willey
60 State Street
Boston, MA 02109
Timothy.Perla@wilmerhale.com
Sonia.Sujanani@wilmerhale.com
Dan.Willey@wilmerhale.com
Phone: 617-526-6000
Facsimile: 617-526-5000

**FAEGRE DRINKER BIDDLE & REATH LLP**

Peter C. Magnuson
Matthew Kilby
Jeffrey P. Justman
Anderson C. Tuggle
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: 612-766-7000
Facsimile: 612-766-1600
peter.magnuson@faegredrinker.com
matthew.kilby@faegredrinker.com
jeff.justman@faegredrinker.com
anderson.tuggle@faegredrinker.com

13

*Attorneys for Defendants*