# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,

                Plaintiff,

   vs.

UNITEDHEALTH GROUP INC., et al.,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civ. No. 24-cv-1743 (JMB/DTS)

CLASS ACTION

LEAD PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL RELIEF FROM THE PSLRA DISCOVERY STAY TO OBTAIN DOCUMENTS ALREADY PRODUCED TO THE DEPARTMENT OF JUSTICE

DATE:     February 27, 2025
TIME:     2:00 P.M. EST
CTRM:   9E

4904-3575-2223.v1

On February 10, 2025, Lead Plaintiff California Public Employees' Retirement System ("Plaintiff") filed its Motion for Partial Relief from the PSLRA Discovery Stay to Obtain Documents Already Produced to the Department of Justice (ECF 62) (the "Motion").[1]  Thereafter, two articles were published that further support the Motion.  First, on February 10, 2025, *The Capitol Forum* published an article titled: "Almost Half of UnitedHealth Group's Revenue Faces Legislative and Regulatory Risk, According to Capitol Forum Analysis."  Ex. B.[2]  Second, on February 21, 2025, *The Wall Street Journal* published an article titled: "DOJ Investigates Medicare Billing Practices at UnitedHealth."  Ex. C.  As discussed below, the articles underscore why Defendants' primary challenge to the Motion to partially lift the discovery stay – that Plaintiff has not satisfied the "undue prejudice" element – should be rejected.

Lifting the PSLRA discovery stay is appropriate in actions like this one where a Plaintiff in a PSLRA action "makes 'a showing of improper or unfair detriment.'"  *Ameriprise Fin. Servs., Inc. & Univision Commc'ns Inc*., 2009 WL 10710599, at *2 (D. Minn. Jan. 9, 2009) (quoting *In re Lernout & Hauspie Sec. Litig*., 214 F. Supp. 2d 100, 107 (D. Mass. 2002)).  To be clear, that showing "need not reach the level of irreparable harm."

---

[1]    Any capitalized terms not otherwise defined herein have the same meaning as set forth in Plaintiff's Motion.  Additionally, unless otherwise noted, citations are omitted and emphasis is added throughout.

[2]    This article was published the same day that Plaintiff filed the Motion, but Plaintiff did not discover it until the following day, February 11, 2025.  The article is a "subscription only" article, and due to the subscription agreement under which the article was accessed, which limits distribution of the article, a redacted version has been filed here.  Exhibits B-C are attached to the concurrently filed Declaration of Robert R. Henssler Jr. in Support of Lead Plaintiff's Reply.  Exhibit A is attached to the Declaration of Robert R. Henssler Jr. in Support of the Motion (ECF 63-1).

- 1 -

*Id.  See also* Motion at 14-16.  The test courts use is one of fairness.  For example, as Judge Tunheim noted in a case cited by Defendants, "[c]ourts have concluded that undue prejudice exists 'where plaintiffs would be unable to make informed decisions about their litigation strategy in a rapidly shifting landscape because they are the only major interested party without documents forming the core of their proceedings.'"  *Lusk v. Life Time Fitness, Inc*., 2015 WL 2374205, at *2-*3 (D. Minn. May 18, 2015).  Thus, the question here is – has Plaintiff shown "unfair detriment" where the DOJ has received internal UnitedHealth documents ***directly relevant*** to this securities-fraud case (including relating to the DOJ's investigation of the Company's Medicare billing practices) and Plaintiff is left at an informational disadvantage in making informed decisions about its litigation strategy in a rapidly shifting landscape?  The answer to the question is a resounding "yes."

Plaintiff alleges, among other things, that UnitedHealth and certain senior executives caused UnitedHealth to engage in an upcoding scheme in its Medicare Advantage business where the sicker the Company claims its members are, the more UnitedHealth gets paid.  ¶¶47-95, 137-183.[3]  According to former Company doctors, UnitedHealth pressured doctors to utilize improper diagnosis codes to inflate the Company's reported profits.  ¶¶7, 47-95.  "***Unconscionable***" is how one former UnitedHealth doctor summarized the misconduct.  ECF 79-3 at 3 (Exhibit 3 to the Complaint).  According to both the Office of Inspector General and *The Wall Street*

---

[3]     All citations to "¶__ " or "¶¶__" are to the Supplemental Consolidated Complaint for Violations of the Federal Securities Laws (ECF 79) (the "Complaint").

*Journal*, Defendants' upcoding scheme generated billions a year in revenue for the Company.  ¶¶47-95; 257-262.

 As detailed in the Complaint, on February 27, 2024, *The Wall Street Journal*, reported that the DOJ was conducting an antitrust investigation into UnitedHealth's "[m]edicare billing issues, including the Company's practices around documenting patients' illnesses," in light of the fact that "[p]ayments to Medicare plans go up if patients have more health conditions, so aggressive documentation practices by doctors and other healthcare providers can be lucrative for insurers such as UnitedHealthcare."  ¶135; *see also* ECF 79-11 (Exhibit 11 to the Complaint).  UnitedHealth's stock price dropped significantly in response to this news.  ¶136.  Thus, a primary focus of this litigation is the alleged Medicare upcoding scheme and the *WSJ's* disclosure of the DOJ antitrust investigation into that scheme.[4]

Defendants argue that Plaintiff has failed to make an adequate showing of undue prejudice because "Plaintiff has not demonstrated that any DOJ action is imminent." Defendants' Opposition to Plaintiff's Motion (ECF 75) ("Opposition") at 10.  The point of this assertion is unclear.  Tellingly, Defendants cite no authority that such a showing is even required.  Instead, Defendants claim that the DOJ investigation described in the *STAT News*

---

[4]     Defendants challenge the "particularized discovery" element by implying that the DOJ antitrust investigation may be broader in scope than this securities-fraud case. Opposition at 11-12.  Plaintiff agrees to limit its request to **relevant** documents already produced to the DOJ (including documents relating to the Company's practices around documenting Medicare patients' illnesses).  With this limitation, Defendants' concern that Plaintiff might discover evidence of additional misconduct not yet pleaded, if the Company produced all documents that they have produced to the DOJ, is eliminated.

- 3 -

article – which reported that the DOJ and California Attorney General's office were conducting interviews of former UnitedHealth doctors who admitted that the Company pressured them to "apply codes to Medicare Advantage patients for conditions they didn't think were appropriate" (Ex. A) – may relate to a DOJ inquiry separate from the one announced in the February 27, 2024 *WSJ* article. Opposition at 10-11. But Defendants' argument – implying the possibility of yet additional DOJ investigations into UnitedHealth's alleged Medicare "upcoding" scheme (a key claim in this securities-fraud case) – only reinforces the undue prejudice. Indeed, as noted by Judge Tunheim, courts have found undue prejudice "***especially when a large number of interested parties are involved***," because Plaintiff "alone lacks information or documents" and will thus be unable to litigate effectively. *Lusk*, 2015 WL 2374205, at \*2-\*3; s*ee also* Motion at 14-16 (collecting cases noting that multiple government investigations support finding undue prejudice due to the rapidly shifting landscape faced by the securities-fraud plaintiff).

And, as it turns out, according to the February 2025 articles, there are multiple DOJ investigations of UnitedHealth's Medicare "upcoding" scheme, and DOJ action may be imminent. *See* Exs. B-C. In fact, *The Capitol Forum* article reported that the DOJ antitrust investigation was at a "fairly late stage" and a DOJ case was just "months away." Ex. B at 2. *The Capitol Forum* article reported, in relevant part:

> **Almost Half of UnitedHealth Group's Revenue Faces Legislative and Regulatory Risk, According to Capitol Forum Analysis**
>
> \*      \*      \*
>
> **DOJ monopolization investigation risk: $105.3 billion in revenue threatened**. A Capitol Forum analysis estimates that roughly $105 billion of

- 4 -

annual UnitedHealth revenue is at risk from the likely areas of focus in the DOJ's monopolization investigation.

The Biden-era DOJ's Antitrust Division was reportedly months away from filing a monopolization case against the company, sources familiar with the matter said. That speaks to the investigation's fairly late stage – DOJ issued a civil investigative demand to UnitedHealth Group about 11 months ago, *The Capitol Forum* has reported. Given the advanced stage of the investigation, the sources said they believe there is little incentive for the Trump administration's nominee to lead the Antitrust Division, Gail Slater, to abandon the probe.

*Id.* at 3.

And, the February 21, 2025, *The Wall Street Journal* article revealed that the DOJ launched a "new civil fraud investigation" into the Company's "Medicare billing practices in recent months." Ex. C at 1. According to the *WSJ* article, the civil investigation is separate from the longer-running Justice Department antitrust probe reported by the *WSJ* in February 2024. The February 21, 2025, *WSJ* article further reported, in relevant part:

The new civil fraud investigation is examining the company's practices for recording diagnoses that trigger extra payments to its Medicare Advantage plans, including at physician groups the insurance giant owns.

A series of articles in The Wall Street Journal last year showed that Medicare paid UnitedHealth billions of dollars for questionable diagnoses. Attorneys with the Justice Department as recently as Jan. 31 interviewed medical providers named in the articles.

In the Medicare Advantage system, insurers get lump-sum payments from the federal government to oversee enrollees' Medicare benefits. When patients have certain diagnoses, the payments go up, creating an incentive to diagnose more diseases.

*              *              *

In December, the Journal reported that its analysis of billions of Medicare records showed that patients examined by UnitedHealth-employed doctors had huge increases in lucrative diagnoses after joining the company's Medicare Advantage plans.

- 5 -

Doctors said UnitedHealth, based in the Minneapolis area, trained them to document revenue-generating diagnoses, including some they felt were obscure or irrelevant. The company also used software to suggest conditions and paid bonuses for considering the suggestions, among other tactics, according to the doctors.

Last summer, the Journal also reported that UnitedHealth added diagnoses to patients' records for conditions that no doctor treated, which triggered an extra $8.7 billion in federal payments in 2021. The untreated diagnoses stemmed from sources including in-home visits by nurses working for the company's HouseCalls unit. Each visit by the UnitedHealth-employed nurses was worth an average of $2,735 in additional federal payments, a Journal analysis of Medicare data spanning 2019 to 2021 found.

Last month, Justice Department lawyers from the offices of the U.S. Attorney for Minnesota and the Washington, D.C.-based Civil Division contacted at least three doctors and a nurse practitioner who were named in the Journal's story on UnitedHealth-owned clinics. One of the people was told the health department's Office of Inspector General was involved as well.

Three said they were questioned about specific diagnoses UnitedHealth promoted for employees to use with patients, incentive arrangements and pressure to add the diagnoses. At least two provided documents, including a contract with a UnitedHealth unit, to the Justice Department.

Valerie O'Meara, a nurse practitioner who worked for UnitedHealth in Washington State, said she was interviewed on Jan. 31 by Justice Department attorneys who were interested in the company software that suggested diagnoses and the role of a UnitedHealth manager who she said urged her to make new diagnoses beyond what doctors had treated.

The attorneys zeroed in on certain diagnoses the company often suggested, such as an obscure hormonal condition called secondary hyperaldosteronism, she said. The Journal's analysis found the condition was rarely diagnosed by Medicare doctors not working for UnitedHealth.

O'Meara said the attorneys focused on her account of how she was told she could add the hyperaldosteronism diagnosis to patients' records without a lab test.

*Id.* at 1-4.

Like the longer-running DOJ antitrust probe, the new DOJ civil fraud investigation is

focused on UnitedHealth's alleged Medicare "upcoding" scheme. As summarized in the

- 6 -

Motion, this is the precise misconduct that lies at the heart of Plaintiff's securities-fraud case. Motion at 3-6; *see also* ¶¶47-95.

The two new articles further demonstrate that Plaintiff has made the requisite showing of "undue prejudice" given that: (1) there are, at a minimum, two DOJ investigations into UnitedHealth's alleged upcoding scheme (DOJ Antitrust and DOJ Civil Fraud Division); (2) there is a California Attorney General investigation into the same misconduct; (3) the DOJ Antitrust investigation is at a "fairly late stage"; (4) United States lawmakers have urged the SEC to open an insider-trading investigation into UnitedHealth executives' stock sales (Motion at 8-9; ¶¶16, 242-246); and (5) Plaintiff is unable to make informed decisions about its litigation strategy in this rapidly shifting landscape. *See Lusk*, 2015 WL 2374205, at *2-*3; Motion at 14-16.[5]

Accordingly, the Court should grant Plaintiff's motion for partial limited relief from the discovery stay.

---

[5]    As noted by the cases cited in the Motion, additional relevant factors for courts to consider in assessing "undue prejudice" include: (1) Plaintiffs consideration of possible settlement negotiations; (2) the effect of delay on Plaintiff (including fading witness memories); and (3) that Plaintiffs pursuit of discovery will fall substantially behind the government actions. Motion at 12-14 (citing *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004) ("the securities plaintiffs could suffer a severe disadvantage in formulating their litigation and settlement strategy – particularly if the parties proceed quickly to settlement negotiations"); *Courter v. CytoDyn, Inc.*, 2022 WL 621535, at *2 (W.D. Wash. Mar. 3, 2022) (undue prejudice factors include "'settlement negotiations, case management, and the effect of delay'"); *Lernout*, 214 F. Supp. 2d at 108 (undue prejudice may include "faded witness memories"); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act* (*ERISA*) *Litig.*, 2009 WL 4796169, at *2 (S.D.N.Y. Nov. 16, 2009) ("Plaintiffs' pursuit of discovery will also 'fall substantially behind the SEC and other government actions.'")). Here, each factor supports a finding of undue prejudice.

- 7 -

DATED:  February 26, 2025          Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
DARREN J. ROBBINS (admitted *pro hac vice*)
SAM S. SHELDON (admitted *pro hac vice*)
LAURIE L. LARGENT (admitted *pro hac vice*)
ROBERT R. HENSSLER JR. (admitted *pro hac vice*)
JEFFREY J. STEIN (admitted *pro hac vice*)
JACK ABBEY GEPHART (admitted *pro hac vice*)


s/ Robert R. Henssler Jr.
ROBERT R. HENSSLER JR.

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
darrenr@rgrdlaw.com
ssheldon@rgrdlaw.com
llargent@rgrdlaw.com
bhenssler@rgrdlaw.com
jstein@rgrdlaw.com
jgephart@rgrdlaw.com

Lead Counsel for Lead Plaintiff

SOMERMEYER SULLIVAN PLLC
TIM SULLIVAN, MN 391528
JAMES PORADEK, MN 290488 (OF COUNSEL)
225 South Sixth Street, Suite 3900
Minneapolis, MN  55402
Telephone:  612/643-3486
tsullivan@somsull.com
jporadek@somsull.com

Local Counsel