**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> UNITEDHEALTH GROUP INC., et al., <br><br> Defendants. | Civ. No. 24-cv-1743 (JMB/DTS) <br><br> <u>CLASS ACTION</u> <br><br> LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE A SUPPLEMENTAL FIRST AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |

4937-7508-1020.v1

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...................................................................................... 1

II.  SUMMARY OF THE RELEVANT ALLEGATIONS ........................................... 2

III. RELEVANT PROCEDURAL HISTORY ................................................... 4

IV.  RECENT DEVELOPMENTS AFTER THE FIRST AMENDED
     COMPLAINT WAS FILED ................................................................... 5

V.   ARGUMENT ......................................................................................... 6

     A.  Supplementing the First Amended Complaint Under Federal Rule of
         Civil Procedure 15(d) Is Proper Because the New Allegations Arise
         from Events that Occurred After the First Amended Complaint Was
         Filed ........................................................................................ 8

     B.  Plaintiff Has Not Engaged in Any Undue Delay ........................................ 9

     C.  There Is No Prejudice to Defendants ............................................. 10

     D.  The Proposed SFAC Is Not Offered in Bad Faith....................................... 11

     E.  The Proposed SFAC Is Not Futile.................................................. 12

VI.  CONCLUSION ...................................................................................... 16

4937-7508-1020.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Andrade Garcia v. Columbia Med. Ctr. of Sherman*,
  996 F. Supp. 605 (E.D. Tex. 1998)............................................................... 10

*Bd. of Trs. of the Auto. Indus. Welfare Fund v. Groth Oldsmobile/Chevrolet, Inc.*,
  2010 WL 760452 (N.D. Cal. Mar. 4, 2010).................................................. 13

*Becker v Univ. of Neb. at Omaha*,
  191 F.3d 904 (8th Cir. 1999) ...................................................................... 12

*Bell v. Allstate Life Ins. Co.*,
  160 F.3d 452 (8th Cir. 1998) ...................................................................... 10

*Dale v. Tjeerdsma*,
  2015 WL 1624854 (D.S.D. Apr. 13, 2015) ................................................... 6

*Dekker v. Cenlar FSB, CitiMortgage, Inc.*,
  2021 WL 2950143 (D. Minn. July 14, 2021) ................................................. 7

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)..................................................................................... 13

*ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*,
  355 F. Supp. 3d 785 (D. Minn. 2019)........................................................... 11

*Fair Isaac Corp. v. Experian Info. Sols. Inc.*,
  2009 WL 10677527 (D. Minn. Feb. 9, 2009) ............................................ 7, 8

*Fed. Ins. Co. v. Sammons Fin. Grp., Inc.*,
  320 F.R.D. 192 (S.D. Iowa 2013) ................................................................ 11

*In re Alphabet, Inc. Sec. Litig.*,
  2023 WL 2277074 (N.D. Cal. Feb. 28, 2023) ................................................ 8

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
  403 F. Supp. 3d 712 (D. Minn. 2019)........................................................... 11

*In re EpiPen Direct Purchaser Litig.*,
  2021 WL 4892231 (D. Minn. Oct. 20, 2021) ............................................ 9, 10

4937-7508-1020.v1

**Page**

*In re Facebook, Inc. Sec. Litig.*,
  87 F.4th 934 (9th. Cir. 2023), *cert. granted in part sub nom.*
  *Facebook, Inc. v. Amalgamated Bank*, _ U.S. _,144 S. Ct. 2629 (2024),
  and *cert. dismissed as improvidently granted sub nom.*
  *Facebook, Inc. v. Amalgamated Bank*, 604 U.S. 4 (2024).......................................... 14

*In re Resideo Techs., Inc., Sec. Litig.*,
  2021 WL 1195740 (D. Minn. Mar. 30, 2021) ............................................................ 14

*In re St. Jude Med., Inc. Sec. Litig.*,
  836 F. Supp. 2d 878 (D. Minn. 2011)................................................................. 13, 14

*Jewish Fed'n of Lincoln, Inc. v. Rosenblatt*,
  2018 WL 6171816 (D. Neb. Nov. 26, 2018) ............................................................ 10

*McAdams v. McCord*,
  584 F.3d 1111 (8th Cir. 2009) ................................................................................. 13

*Netbula, LLC v. Distinct Corp.*,
  212 F.R.D. 534 (N.D. Cal. 2003)............................................................................. 13

*Perez v. Target Corp.*,
  2024 WL 4804656 (D. Minn. Nov. 15, 2024) ........................................................... 12

*Pinnacle Commc'ns Int'l, Inc. v. Am. Fam. Mortg. Corp.*,
  2005 WL 8164742 (D. Minn. Feb. 16, 2005) ........................................................... 12

*Pub. Emps. Ret. Sys. of Miss., Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*,
  769 F.3d 313 (5th Cir. 2014) .................................................................................. 12

*Reuter v. Jax Ltd., Inc.*,
  711 F.2d 918 (8th Cir. 2013) .................................................................................... 8

*Robinson v. Midwest Division-RMC, LLC*,
  2020 WL 2151880 (W.D. Mo. May 5, 2020) ........................................................... 10

*Rose v. Lincoln Benefit Life Co.*,
  2021 WL 3418551 (D. Minn. Aug. 5, 2021) .............................................................. 7

*Sanders v. Clemco Indus.*,
  823 F.2d 214 (8th Cir. 1987) .................................................................................. 10

- iii -

**Page**

*Schlief v. Nu-Source, Inc.*,
    2011 WL 13140709 (D. Minn. Aug. 22, 2011) ........................................................ 12

*Singer v. Reali*,
    883 F.3d 425 (4th Cir. 2018) ................................................................................ 11

*Slavkov v. Fast Water Heater Partners I, LP*,
    2015 WL 5071933 (N.D. Cal. Aug. 27, 2015) ........................................................ 13

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ............................................................................................. 12

*United States v. Vorachek*,
    563 F.2d 884 (8th Cir. 1977) ............................................................................ 7, 8

*White v. Crosby, City of*,
    2018 WL 11512339 (D.N.D. Nov. 20, 2018) ........................................................... 6

*Wizards of the Coast LLC v. Cryptozoic Ent. LLC*,
    309 F.R.D. 645 (W.D. Wash. 2015) ...................................................................... 11

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 8 ................................................................................................................. 14
    Rule 8(a)(2) ......................................................................................................... 13
    Rule 12(b)(6) ....................................................................................................... 12
    Rule 15 ................................................................................................................. 7
    Rule 15(a) ........................................................................................................ 6, 7
    Rule 15(a)(1)(B) ................................................................................................... 5
    Rule 15(a)(2) ......................................................................................................... 9
    Rule 15(d) ...................................................................................................*passim*

## SECONDARY AUTHORITIES

6A Charles A. Wright et al.,
    *Fed. Prac. & Proc.* (3d ed. 2024)
        §1504 ........................................................................................................... 6

4937-7508-1020.v1

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 15(d) ("Rule 15(d)"), Lead Plaintiff California Public Employees' Retirement System ("CalPERS" or "Plaintiff") respectfully submits this memorandum of law in support of its Motion for Leave to File a Supplemental First Amended Consolidated Complaint for Violations of the Federal Securities Laws ("Motion").  Rule 15(d) allows parties "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented" with leave of court.  Fed. R. Civ. P. 15(d).

Plaintiff seeks leave to file a supplemental First Amended Complaint ("SFAC") adding new allegations arising from events that occurred *after* the First Amended Consolidated Complaint for Violations of the Federal Securities Laws (ECF 97) ("First Amended Complaint") was filed on March 21, 2025.[1]  Plaintiff seeks to supplement the First Amended Complaint by adding: (1) a new April 17, 2025 corrective disclosure, along with subsequent media and analyst reports, that further revealed the previously concealed facts concerning Defendants' upcoding scheme and the impact thereof; (2) four new false and misleading statements made by Defendants relating to the Company's upcoding scheme and the DOJ's investigation of the scheme; and (3) new factual allegations from media reports and other sources published after the First Amended Complaint was filed, providing further support for falsity and Defendants' scienter.  A redline version of the proposed SFAC

---

[1]    All capitalized terms not otherwise defined herein have the same meaning as set forth in the First Amended Complaint.  Additionally, unless otherwise noted, all "¶__" or "¶¶__" citations herein are to the First Amended Complaint.

- 1 -

showing the supplemental information, is attached to the Declaration of Tim Sullivan as Exhibit A.[2]

UnitedHealth Group, Inc. ("UnitedHealth" or the "Company"), Andrew Witty, Stephen Hemsley, and Brian Thompson's (collectively, "Defendants") response to the First Amended Complaint is currently due May 20, 2025. ECF 101. Plaintiff and Defendants, through their counsel of record, have met and conferred regarding this motion, and Defendants will review the proposed SFAC and the parties will then further meet and confer about Defendants' position.

## II.   SUMMARY OF THE RELEVANT ALLEGATIONS

This securities fraud action alleges that UnitedHealth, one of the largest and most powerful healthcare conglomerates in the country, abused its size and power in order to defraud the American healthcare system, harming investors as Defendants' fraudulent misconduct was exposed to the market. The allegations relevant to this motion are that Defendants were actively engaged in a scheme to fraudulently diagnose Medicare Advantage plan members with various risk-adjusting conditions that caused Medicare to overpay UnitedHealth for diagnoses that its patients did not actually have – the "Upcoding Scheme" – which resulted in billions of dollars of improper revenue for the Company at the expense of the Federal Government and, ultimately, American taxpayers. ¶¶58-166. In 2021 alone, UnitedHealth received $8.7 billion in payments from the Federal Government for high-value

---

[2] *See* Exhibit A attached to the concurrently filed Declaration of Tim Sullivan in Support of Lead Plaintiff's Motion for Leave to File a Supplemental First Amended Consolidated Complaint for Violations of the Federal Securities Laws (a redline copy of the SFAC incorporating the new material findings and information and attaching the two new investigative news reports as Exhibits 16 and 19, respectively).

- 2 -

diagnoses ***that no doctor treated*** – an amount equal to more than 50% of the Company's net income. ¶101. Plaintiff alleges that UnitedHealth, through its army of doctors, nurses, and risk adjustment personnel, enacted a targeted scheme designed to encourage, and in some cases coerce, unnecessary, unwanted, and nonexistent diagnoses to the charts of Medicare Advantage patients, thereby increasing the risk score for that patient and, in turn, increasing the amount that UnitedHealth would be paid by the Centers for Medicare & Medicaid Services ("CMS"). ¶¶58-166. Just one way in which Defendants executed UnitedHealth's fraudulent Upcoding Scheme was to mandate that UnitedHealth's providers use QuantaFlo – a device that is notorious for generating false positive results – to test for peripheral artery disease, a diagnosis that would allow UnitedHealth to collect an additional $3,600 per patient per year from the Federal Government. ¶81. On April 16, 2025, *STAT News* reported that Semler Scientific, Inc., the manufacturer of QuantaFlo, offered to pay $30 million to settle DOJ fraud claims related to CMS paying out improper claims based on the use of QuantaFlo. Ex. A. ¶¶224-228.

The Upcoding Scheme has been extensively documented by investigative journalists from several publications including *The Wall Street Journal* ("*WSJ*"), *STAT News*, and *The Examiner News*, each of which has interviewed numerous current and former UnitedHealth employees and medical practitioners. ¶¶151-158. Former UnitedHealth physicians have publicly blown the whistle on the Company's Medicare billing practices detailing how UnitedHealth pressured the doctors to add codes the doctors did not believe applied so that the Company would get paid more. ¶¶7, 47-95. A former UnitedHealth doctor admitted: "'***It just felt so unconscionable***.'" ECF 97-4 at 3 (Exhibit 4 to the First

- 3 -

Amended Complaint).[3]   The Company is also the subject of multiple government investigations, including by the United States Senate and the DOJ.   ¶¶298-302, 309-312. According to United States Senator Charles Grassley, in a February 24, 2025 letter to UnitedHealth requesting relevant documents, the fact that UnitedHealth has so many Medicare Advantage members with lucrative codes who have not received needed care for these serious conditions, "raises serious questions about [the Company's] practices," which he described as "***apparent fraud, waste and abuse***."   ¶311.

## III.   RELEVANT PROCEDURAL HISTORY

CalPERS filed its Consolidated Complaint for Violations of the Federal Securities Laws on October 4, 2024 (ECF 45) (the "Consolidated Complaint").   Since filing the Consolidated Complaint, developments with regard to multiple DOJ and regulatory investigations against the Company and a stream of new public information as a result of the diligent investigative reporting of outlets like the *WSJ* and *STAT News* have resulted in revelations that necessitated Plaintiff updating its allegations.

First, following the release of a report by the Office of Inspector General for the Department of Health and Human Services and two investigative reports by *STAT News* that exposed damning details of the Upcoding Scheme, Plaintiff moved to supplement its complaint on November 22, 2024.  *See* ECF 46-51.  The Court granted Plaintiff's request on November 25, 2024 (ECF 53), and Plaintiff filed its Supplemental Consolidated Complaint for Violations of the Federal Securities Laws the same day (ECF 54).

---

[3]   Unless otherwise noted, citations are omitted and emphasis is added throughout.

4937-7508-1020.v1

Then, On February 21, 2025, the *WSJ* revealed that the DOJ launched a new civil fraud investigation into UnitedHealth's Medicare billing practices, which will "examin[e] the company's practices for recording diagnoses that trigger extra payments to its Medicare Advantage plans." ¶209. Following the release of this news, UnitedHealth's stock price significantly declined, falling $36 per share. ¶¶329-332. Plaintiff, within 21 days of Defendants' Motion to Dismiss the Supplemental Consolidated Complaint for Violations of the Federal Securities Laws (ECF 90) ("Motion to Dismiss" or "Mtn."), filed the First Amended Complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B).

Plaintiff now seeks leave to supplement the First Amended Complaint as a result of new critical facts that have come to light since it was filed.

## IV.    RECENT DEVELOPMENTS AFTER THE FIRST AMENDED COMPLAINT WAS FILED

On April 17, 2025 – less than a month after Plaintiff filed its First Amended Complaint – Defendants surprised investors by slashing UnitedHealth's 2025 earnings estimates, blaming problems in the Company's Medicare Advantage segment. Ex. A, ¶¶229-230. On news of this earnings downgrade, UnitedHealth stock fell by more than 20%. Ex. A, ¶¶357-370. Financial analysts and financial media immediately connected the earnings downgrade to the Upcoding Scheme and the DOJ's ongoing investigation into UnitedHealth's Medicare Advantage coding practices. *Id.* Also in April 2025, *STAT News* published two new reports related to Defendants' Upcoding Scheme: (1) a report concerning a new study that estimated that Defendants' Upcoding Scheme resulted in over $13 billion in

- 5 -

extra payments to UnitedHealth in 2021 (*id.*, ¶119[4]); and (2) a report concerning the QuantaFlo device used by UnitedHealth practitioners to "diagnose" peripheral artery disease (*see supra* at 3) and an offer by the device manufacturer to settle a DOJ healthcare fraud lawsuit related to how the device was used by insurers, including UnitedHealth, to improperly extract payments from CMS (*id.*, ¶¶224-228[5]).

## V.    ARGUMENT

Rule 15(d) allows parties "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened ***after*** the date of the pleading to be supplemented" with leave of court.  Fed. R. Civ. P. 15(d).  Rule 15(d) provides in part: "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  *Id.*  "The purpose of subdivision (d) is to promote as complete an adjudication of the dispute between the parties as is possible."  6A Charles A. Wright et al., *Fed. Prac. & Proc.* §1504 (3d ed. 2024).

"'Leave to file a supplemental complaint under Rule 15(d) rests with the court's discretion and should be freely granted'" barring any "'undue prejudice or delay.'" *White v. Crosby, City of*, 2018 WL 11512339, at *2 (D.N.D. Nov. 20, 2018) (quoting *Dale v. Tjeerdsma*, 2015 WL 1624854, at *2 (D.S.D. Apr. 13, 2015)).  This discretion is "subject to the same standard" as motions for leave to amend under Federal Rule of Civil Procedure

---

[4]    *See id.* at Ex. 16 (Tara Bannow, *Study shows how UnitedHealth uses coding to rake in extra cash from Medicare Advantage*, STAT News (Apr. 7, 2025)).

[5]    *See id.* at Ex. 19 (Lizzy Lawrence, *Device maker that helped UnitedHealth collect billions offers to settle fraud claims with DOJ*, STAT News (Apr. 16, 2025)).

- 6 -

15(a) ("Rule 15(a)"). *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 2009 WL 10677527, at *14 n.7 (D. Minn. Feb. 9, 2009) (collecting cases finding that motions to amend under Rule 15(a) and motions to supplement under Rule 15(d) are subject to the same standard). Thus, in keeping "'with the overarching flexibility of Rule 15, courts customarily have treated requests to supplement under Rule 15(d) liberally. This liberality is reminiscent of the way in which courts have treated requests to amend under Rule 15(a).'" *Dekker v. Cenlar FSB, CitiMortgage, Inc.*, 2021 WL 2950143, at *1 (D. Minn. July 14, 2021).

Importantly, while the standard for requests for leave to supplement under Rule 15(d) is virtually identical as that for leave to amend under Rule 15(a), the content of such requests is different. "'An ***amended*** pleading is designed to include matters occurring before the filing of the bill but either overlooked or not known at the time. A ***supplemental*** pleading, however, is designed to cover matters subsequently occurring but pertaining to the original cause.'" *United States v. Vorachek*, 563 F.2d 884, 886 (8th Cir. 1977). This is consistent with the plain language of the rule itself. *See* Rule 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened ***after*** the date of the pleading to be supplemented.").

Courts have generally denied leave to supplement only "'if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" *Rose v. Lincoln Benefit Life Co.*, 2021 WL 3418551, at *1 (D. Minn. Aug. 5, 2021) (granting leave to supplement, and noting that leave to supplement

- 7 -

4937-7508-1020.v1

is subject to the same standard as leave to amend) (quoting *Reuter v. Jax Ltd., Inc.*, 711 F.2d 918, 922 (8th Cir. 2013).  *See also Fair Isaac*, 2009 WL 10677527, at *14 n. 7 (collecting cases stating that leave to amend and leave to supplement are subject to the same standard).  As discussed below, Plaintiff's request should be granted as none of these circumstances apply here.

        **A.**        **Supplementing the First Amended Complaint Under Federal Rule of Civil Procedure 15(d) Is Proper Because the New Allegations Arise from Events that Occurred After the First Amended Complaint Was Filed**

"'A supplemental pleading . . . is designed to cover matters subsequently occurring but pertaining to the original cause.'" *Vorachek*, 563 F.2d at 886.  This is consistent with the plain language of the rule itself.  *See* Rule 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.").

In keeping with Rule 15(d), the new allegations arise from events and information that emerged shortly ***after*** the First Amended Complaint was filed on March 21, 2025.  These include the new allegations based on the April 7, 2025 and April 16, 2025 *STAT News* investigative reports, and the April 17, 2025 corrective disclosure, which caused UnitedHealth's stock price to fall more than 20%.  *See* Ex. A, ¶¶119, 224-230, 357-370.  *In re Alphabet, Inc. Sec. Litig.*, 2023 WL 2277074 (N.D. Cal. Feb. 28, 2023) (granting motion to supplement where plaintiff sought to add an additional corrective disclosure that occurred following the filing of the prior pleadings).

4937-7508-1020.v1

Additionally, the newly added false and misleading statements made in December 2024, January 2025, and February 2025 about UnitedHealth's FY 2025 earnings guidance downgrade, and the DOJ investigation into UnitedHealth's upcoding practices, are also an appropriate Rule 15(d) supplement as the April 17, 2025 disclosure revealed the relevant truth about these misstatements. *See* Ex. A, ¶¶258-261, 262(e)-(g).  On April 17, 2025, Defendants stunned the market by cutting UnitedHealth's 2025 projected earnings by 12%, citing problems in its Medicare Advantage business.  *Id*.  Analysts following the Company immediately linked this downgrade to the DOJ investigations into UnitedHealth's coding practices and the recent reforms to the Medicare Advantage risk adjustment payment model. *Id*.  As alleged in the SFAC, it was through the April 17 disclosure that the relevant truth about these statements was disclosed to investors.

### B.    Plaintiff Has Not Engaged in Any Undue Delay

Undue delay exists where the moving party has engaged in "dilatory tactics."  *In re EpiPen Direct Purchaser Litig.*, 2021 WL 4892231, at *3-*4 (D. Minn. Oct. 20, 2021). When determining whether a party moving for leave to amend has engaged in delay that would justify denial of leave under Rule 15(a)(2), courts distinguish between "***mere*** delay (which would be no bar to the Court granting the motion to amend) [and] . . . ***undue*** delay (which might be a bar)."  *Id*. (emphasis in original).

Here, Plaintiff has not engaged in any delay, undue or otherwise.  This litigation is still in its early stages, such that there is not even a deadline in place for when Plaintiff must file an amendment.  *See id*. at *4 (noting that courts have found no undue delay "even though the party filed the motion on both the last day allowed in the scheduling order and on the day

- 9 -

that discovery closed") (citing *Andrade Garcia v. Columbia Med. Ctr. of Sherman*, 996 F. Supp. 605, 609 (E.D. Tex. 1998)).  Moreover, Plaintiff's Motion comes within weeks of learning of the new facts, which were made public on April 7, 2025 (in the case of the *STAT News* report revealing the results of the Annals of Internal Medicine Study), April 16, 2025 (in the case of the *STAT News* report revealing the QuantaFlo manufacturer's offer to pay $30 million to settle DOJ fraud claims), and April 17, 2025 (in the case of UnitedHealth's reduction of its earnings projections for 2025, which analysts immediately linked to the Upcoding Scheme and DOJ investigations of the scheme).  Ex. A, ¶¶119, 224-230, 357-370.

### C.    There Is No Prejudice to Defendants

"[E]ven if the court [determines that there is] . . . undue delay, '[d]elay alone is insufficient justification for denying a motion to amend; ***prejudice to the nonmovant must also be shown***.'"  *EpiPen*, 2021 WL 4892231, at \*5 (quoting *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998)).  "The burden of proof to show prejudice rests with the party opposing [the] amendment."  *Robinson v. Midwest Division-RMC, LLC*, 2020 WL 2151880, at \*1 (W.D. Mo. May 5, 2020) (citing *Sanders v. Clemco Indus.*, 823 F.2d 214, 217 (8th Cir. 1987)).

Defendants, in order to bear their burden, must demonstrate that the proposed supplement would result in their expenditure of "significant additional resources on discovery and trial preparation, or significantly delay resolving the dispute." *Jewish Fed'n of Lincoln, Inc. v. Rosenblatt*, 2018 WL 6171816, at \*1 (D. Neb. Nov. 26, 2018).  *See also Bell*, 160 F.3d at 454 ("[W]hen ***late tendered*** amendments involve new theories of recovery and impose additional discovery requirements, courts are less likely to find an abuse of discretion

- 10 -

[in denying leave to amend] due to the prejudice involved.").  This, Defendants cannot do.

None of these potential sources of prejudice apply here, as the parties have not even begun

negotiating the scope of discovery, let alone preparing for trial.  Thus, "any concerns related

to either undue delay or unfair prejudice" are nonexistent.  *Fed. Ins. Co. v. Sammons Fin.*

*Grp., Inc.*, 320 F.R.D. 192, 197-98 (S.D. Iowa 2013) (granting leave to amend where the

nonmoving party "will have ample opportunity to conduct appropriate discovery and assert

its defenses" as to the proposed amendment).

### D.    The Proposed SFAC Is Not Offered in Bad Faith

"[B]ad faith requires more than mere negligence or bad judgment; it is the 'conscious

doing of a wrong because of dishonest purpose or moral obliquity.'"  *ecoNugenics, Inc. v.*

*Bioenergy Life Sci., Inc.*, 355 F. Supp. 3d 785, 791 (D. Minn. 2019) (citing *Wizards of the*

*Coast LLC v. Cryptozoic Ent. LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015)).  "Given the

liberal policy favoring amendment . . . the burden of demonstrating bad faith falls upon the

party opposing amendment."  *ecoNugenics*, 355 F. Supp. 3d at 791.

Defendants cannot carry this burden.  Plaintiff proposes the supplement to incorporate

information revealed ***after*** the filing of the First Amended Complaint, including information

which bolsters Plaintiff's allegations in light of arguments made by Defendants in their

Motion to Dismiss.  *See supra* at 8-9; Mtn. at 6-10.  For example, Defendants' argued that

the disclosure of a DOJ investigation can't satisfy the loss causation pleading requirement.

Mtn. at 8-10.  While Defendants are mistaken about the law on this issue,[6] the SFAC adds

---

[6]    *See, e.g.*, *In re CenturyLink Sales Pracs. & Sec. Litig.*, 403 F. Supp. 3d 712, 735
(D. Minn. 2019) (corrective disclosures can come in many forms); *Singer v. Reali*, 883 F.3d

- 11 -

another corrective disclosure – the April 17, 2025 reduction in earnings projections which analysts linked to the Upcoding Scheme (Ex. A, ¶¶357-370) – and further supports Plaintiff's loss causation allegations. Notably, such a purpose was recently endorsed by Judge Bryan. *See Perez v. Target Corp.*, 2024 WL 4804656, at *14 (D. Minn. Nov. 15, 2024) ("Plaintiffs also could have filed a motion for leave to amend, pursuant to [Local] Rule 15.1(b), upon reviewing the arguments Defendants raised in their motion to dismiss . . . .") (Bryan, J.).

### E.  The Proposed SFAC Is Not Futile

The standard for determining the legal sufficiency of a proposed amendment, or supplement in this case, is the same as that used for evaluating a pleading under Federal Rule of Civil Procedure 12(b)(6). *Schlief v. Nu-Source, Inc.*, 2011 WL 13140709, at *1 (D. Minn. Aug. 22, 2011). Under this standard, a court must "consider the complaint in its entirety," "accept all factual allegations . . . as true," and construe those allegations in the light most favorable to the plaintiff. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007). Thus, supplementing under Rule 15(d) should be allowed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief." *Pinnacle Commc'ns Int'l, Inc. v. Am. Fam. Mortg. Corp.*, 2005 WL 8164742, at *2 (D. Minn. Feb. 16, 2005); *see also Becker v Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999) ("a motion to amend should be denied on the merits 'only if it asserts ***clearly frivolous*** claims or defenses'"). "Ordinarily, courts will defer consideration of challenges to

---

425 (4th Cir. 2018) (the disclosure of a government investigation, including what was being investigated, satisfied loss causation); *Pub. Emps. Ret. Sys. of Miss., Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 323-25 (5th Cir. 2014) (viewed holistically, disclosure of various government investigations adequately pleads loss causation).

- 12 -

4937-7508-1020.v1

the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003); *see also Bd. of Trs. of the Auto. Indus. Welfare Fund v. Groth Oldsmobile/Chevrolet, Inc.*, 2010 WL 760452, at *3 (N.D. Cal. Mar. 4, 2010) ("In general, the futility of an amendment is better tested in a motion to dismiss for failure to state a claim or a summary judgment motion."); *Slavkov v. Fast Water Heater Partners I, LP*, 2015 WL 5071933, at *2 (N.D. Cal. Aug. 27, 2015) (finding no futility, and holding that "'"[t]he merits or facts of a controversy are not properly decided in a motion for leave to amend and should instead be attacked by a motion to dismiss for failure to state a claim or for summary judgment"'").

Futility is not an issue here.  First, the supplemental allegations adequately allege loss causation as to the new April 17, 2025 partial corrective disclosure.  "To adequately plead loss causation, the complaint must state facts showing a causal connection between the defendant's misstatements and the plaintiff's losses." *In re St. Jude Med., Inc. Sec. Litig.*, 836 F. Supp. 2d 878, 908 (D. Minn. 2011) (citing *McAdams v. McCord*, 584 F.3d 1111, 1114 (8th Cir. 2009)).  "The pleading of loss causation is subject only to 'the simple test' of Rule 8(a)(2)'s requirement of a short and plain statement of the claim." *St. Jude*, 836 F. Supp. 2d at 908 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)).  As the SFAC alleges, on April 17, 2025, UnitedHealth's stock price dropped over 20% in response to Defendants' announcement that UnitedHealth cut 2025 earnings guidance, specifically citing problems in its Medicare Advantage business.  Ex. A, ¶¶229-230, 357-370.  Defendants blamed the lowered guidance on "heightened care activity indications within UnitedHealth's Medicare Advantage businesses," and "a greater-than-expected impact to current and new

- 13 -

complex patients from the ongoing Medicare funding reductions enacted by the [Joe Biden presidential] administration." *Id.* The SFAC further alleges that market analysts directly connected these problems, and the resulting guidance cut, to the Upcoding Scheme and the ongoing DOJ investigations, noting that UnitedHealth was pulling back on its utilization management and risk adjustment practices in response to increased DOJ scrutiny and Biden-era reforms targeting Medicare Advantage overcharging and upcoding. *Id.* These supplemental factual allegations meet the requirements of Federal Rule of Civil Procedure 8, and are sufficient to show a causal connection between Defendants' concealment of the Upcoding Scheme and Plaintiff's losses. *St. Jude*, 836 F. Supp. 2d at 908-09 (finding that a reduction in guidance was sufficiently pled as a corrective disclosure); *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 955-57 (9th. Cir. 2023), *cert. granted in part sub nom. Facebook, Inc. v. Amalgamated Bank*, _ U.S. _,144 S. Ct. 2629 (2024), and *cert. dismissed as improvidently granted sub nom. Facebook, Inc. v. Amalgamated Bank*, 604 U.S. 4 (2024) (same).

Second, the SFAC's new statements meet the pleading standards and are not futile. "To meet the PSLRA's heightened pleading requirement for falsity, a plaintiff must plead the who, what, when, where, and how of the misleading statements or omissions." *In re Resideo Techs., Inc., Sec. Litig.*, 2021 WL 1195740, at *4 (D. Minn. Mar. 30, 2021). In addition, a plaintiff "must allege why the misleading statements or omissions were false when they were made." *Id.* The SFAC easily meets these requirements. *See generally*, Ex. A. For instance, the SFAC explains that Defendants' denial of the February 21, 2025 *WSJ* report of a new DOJ investigation was false, as evidenced by an e-mail the Company sent just weeks later to

- 14 -

a former employee, stating "the government has asked [the Company] some questions regarding [its] coding practices]" and indicating that the Company had already hired outside counsel to handle the new government investigation. *Id.*, ¶¶222-223, 262(f).  Likewise, the SFAC asserts the new 2025 guidance statements Defendants made in December 2024 and January 2025 were false and misleading because they failed to disclose their ongoing Upcoding Scheme, and that the risk adjustment model reforms the presidential administration of Joe Biden implemented were negatively impacting UnitedHealth's Medicare Advantage business.  *Id.*, ¶262(e).  Accordingly, supplemental alleged false and misleading statements are actionable, and permitting the SFAC would not be futile.

Last, the supplemental allegations from the new *STAT News* reports bolster and expand on Plaintiff's current falsity and scienter allegations, thereby negating any futility challenge.  The reports document: (1) the results of an investigation into UnitedHealth's billing practices that found that UnitedHealth received over $13 billion in 2021 as a result of improper coding practices, and (2) that the manufacturer of one of the devices used prolifically by UnitedHealth to effectuate the Upcoding Scheme had offered to pay $30 million to settle healthcare fraud claims with the DOJ. *Id.*, ¶¶119, 225-228; *see also id.* at Exs. 16-19.  Both reports further confirm the existence of an Upcoding Scheme, the inference that Defendants were aware of the fraudulent and improper nature of its Upcoding Scheme, and that Defendants' statements were knowingly false and misleading when made.

- 15 -

## VI.   CONCLUSION

For all these reasons, Plaintiff respectfully requests that the Court grant Plaintiff leave to file a clean version of the SFAC attached as Ex. A to the concurrently filed Declaration of Tim Sullivan, including Exhibits 1-20 attached thereto.

Additionally, Plaintiff respectfully requests that the Court order the parties to meet and confer within seven days of ruling on this motion and submit a new proposed schedule to the Court for Defendants' response to the SFAC.

DATED:  May 5, 2025                    Respectfully submitted,

TM SULLIVAN PLLC
TIM SULLIVAN, MN 391528
JAMES PORADEK, MN 290488 (OF COUNSEL)


                    s/ TIM SULLIVAN
                    TIM SULLIVAN

225 South Sixth Street, Suite 3900
Minneapolis, MN  55402
Telephone:  773/919-8667
tim@tmsull.com
jporadek@tmsull.com

Local Counsel for Lead Plaintiff

- 16 -

4937-7508-1020.v1

ROBBINS GELLER RUDMAN & DOWD LLP
DARREN J. ROBBINS (admitted *pro hac vice*)
SAM S. SHELDON (admitted *pro hac vice*)
LAURIE L. LARGENT (admitted *pro hac vice*)
ROBERT R. HENSSLER JR. (admitted *pro hac vice*)
JEFFREY J. STEIN (admitted *pro hac vice*)
JACK ABBEY GEPHART (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
darrenr@rgrdlaw.com
ssheldon@rgrdlaw.com
llargent@rgrdlaw.com
bhenssler@rgrdlaw.com
jstein@rgrdlaw.com
jgephart@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 17 -

4937-7508-1020.v1