# EXHIBIT 20

CHARLES E. GRASSLEY, IOWA, CHAIRMAN

LINDSEY O. GRAHAM, SOUTH CAROLINA    RICHARD J. DURBIN, ILLINOIS
JOHN CORNYN, TEXAS    SHELDON WHITEHOUSE, RHODE ISLAND
MICHAEL S. LEE, UTAH    AMY KLOBUCHAR, MINNESOTA
TED CRUZ, TEXAS    CHRISTOPHER A. COONS, DELAWARE
JOSH HAWLEY, MISSOURI    RICHARD BLUMENTHAL, CONNECTICUT
THOM TILLIS, NORTH CAROLINA    MAZIE K. HIRONO, HAWAII
JOHN KENNEDY, LOUISIANA    CORY A. BOOKER, NEW JERSEY
MARSHA BLACKBURN, TENNESSEE    ALEX PADILLA, CALIFORNIA
ERIC SCHMITT, MISSOURI    PETER WELCH, VERMONT
KATIE BOYD BRITT, ALABAMA    ADAM B. SCHIFF, CALIFORNIA
ASHLEY MOODY, FLORIDA

**United States Senate**

COMMITTEE ON THE JUDICIARY

WASHINGTON, DC 20510–6275

February 24, 2025

**VIA ELECTRONIC TRANSMISSION**

Mr. Andrew Witty
Chief Executive Officer
UnitedHealth Group, Inc.

Dear Mr. Witty:

Twenty-five years ago, I helped shepherd Medicare Part C into law, and I have repeatedly advocated for the program.[1]  Further, since 2015, I have pressed the Centers for Medicare & Medicaid Services (CMS) and the Department of Justice (DOJ) to recover improper payments made to Medicare Advantage Organizations (MAO), including UnitedHealth Group.[2]  Despite these oversight efforts, MAOs continue to defraud the American taxpayer, costing them billions of dollars a year.[3]

On February 21, 2025, the *Wall Street Journal* published an article titled, "DOJ Investigates Medicare Billing Practices at UnitedHealth," which reported that the DOJ launched an investigation into UnitedHealth Group's Medicare billing practices.[4]  According to the *Journal*, UnitedHealth Group used in-home health risk assessments (HRA) and chart reviews to diagnose enrollees with obscure revenue-generating diagnoses that were irrelevant or inaccurate.[5]  Further, according to the reporting, the inappropriate diagnoses resulted in extra payments of $8.7 billion in just 2021.[6]

On October 24, 2024, the Health and Human Services Office of Inspector General (HHS OIG) released a report titled, *Medicare Advantage: Questionable Use of Health Risk Assessments Continues To Drive Up Payments to Plans by Billions*.[7]  The HHS OIG found that UnitedHealth Group received more money from CMS for diagnoses only made during in-home HRAs and chart reviews than any other MAO.[8]  The OIG, which

---

[1] Thomas Oliver, Philip Lee, and Helene Lipton, *A Political History of Medicare and Prescription Drug Coverage*, The Millbank Quarterly (June 2004), https://pmc.ncbi.nlm.nih.gov/articles/PMC2690175/; Webpage, Cuts to the Medicare Advantage Program, Off. of Senator Charles E. Grassley (Feb. 27, 2014), https://www.grassley.senate.gov/news/video/watch/cuts-to-the-medicare-advantage-program; Letter from Senator Charles E. Grassley, Chairman, Senate Comm. on Finance, to Seema Verna, Administrator, Cntrs. for Medicare & Medicaid Srvcs. (Mar. 29, 2019), https://www.finance.senate.gov/imo/media/doc/03292019%20Medicare%20Advantage%20Letter.pdf.

[2] Letter from Senator Charles E. Grassley, Ranking Member, Senate Comm. on the Budget, to Chiquita Brooks-LaSure, Administrator, Cntrs. for Medicare & Medicaid Srvcs. (Dec. 16, 2024), https://www.grassley.senate.gov/imo/media/doc/grassley_to_cms_-_radv_final_rule.pdf; Letter from Senator Charles E. Grassley, Chairman, Senate Comm. on the Judiciary, to Seema Verna, Administrator, Cntrs. for Medicare & Medicaid Srvcs. (Apr. 17, 2017), https://www.grassley.senate.gov/imo/media/doc/2017-04-17%20CEG%20to%20CMS%20(Risk%20Score%20Follow%20Up).pdf; Letter from Senator Charles E. Grassley, Chairman, Senate Comm. on the Judiciary, to Andrew Slavitt, Administrator, Cntrs. for Medicare & Medicaid Srvcs. (May 19, 2015), https://media.npr.org/documents/2015/may/grassley_cms.pdf; Letter from Senator Charles E. Grassley, Chairman, Senate Comm. on the Judiciary, to Loretta Lynch, Attorney General, Dept. of Justice (May 19, 2015), https://media.npr.org/documents/2015/may/grassley_doj.pdf.

[3] *Medicare Advantage Provider Independent Health to Pay Up To $98M to Settle False Claims Act Suit*, Dept. of Justice (Dec. 20, 2024), https://www.justice.gov/archives/opa/pr/medicare-advantage-provider-independent-health-pay-98m-settle-false-claims-act-suit; *Oak Street Health Agrees to Pay $60M to Resolve Alleged False Claims Act Liability for Paying Kickbacks to Insurance Agents in Medicare Advantage Recruitment Scheme*, Dept. of Justice (Sep. 18, 2024), https://www.justice.gov/archives/opa/pr/oak-street-health-agrees-pay-60m-resolve-alleged-false-claims-act-liability-paying-kickbacks.

[4] Christopher Weaver and Anna Wilde Mathews, *DOJ Investigates Medicare Billing Practices at UnitedHealth*, The Wall Street Journal (Feb. 21, 2025), https://www.wsj.com/health/healthcare/unitedhealth-medicare-doj-diagnosis-investigation-66b9f1db?msockid=1979114121c76140288a04d6207560b1.

[5] *Id.*; Christopher Weaver, Anna Wilde Mathews, and Tom McGinty, *UnitedHealth's Army of Doctors Helped It Collect Billions More From Medicare*, The Wall Street Journal (Dec. 29, 2024), https://www.wsj.com/health/healthcare/unitedhealth-medicare-payments-doctors-c2a343db?msockid=1979114121c76140288a04d6207560b1; Anna Wilde Mathews et al., *The One-Hour Nurse Visits That Let Insurers Collect $15 Billion From Medicare*, The Wall Street Journal (Aug. 4, 2024), https://www.wsj.com/health/healthcare/medicare-extra-payments-home-visits-diagnosis-057dca8b?msockid=1979114121c76140288a04d6207560b1; Christopher Weaver et al., *Insurers Pocketed $50 Billion From Medicare for Diseases No Doctor Treated*, The Wall Street Journal (July 8, 2024), https://www.wsj.com/health/healthcare/medicare-health-insurance-diagnosis-payments-b4d99a5d?msockid=1979114121c76140288a04d6207560b1.

[6] Weaver & Mathews, *supra* note 4.

[7] U.S. Dep't of Health and Human Services, Office of Inspector General, *Medicare Advantage: Questionable Use of Health Risk Assessments Continues To Drive Up Payments to Plans by Billions*, OEI-03-23-00380 (Oct. 24, 2024), https://oig.hhs.gov/documents/evaluation/10028/OEI-03-23-00380.pdf.

[8] *Id.*

reviewed all MAO enrollees, noted that, "the lack of any other follow-up visits, procedures, tests, or supplies for these diagnoses…raises concerns that either: (1) the diagnoses are inaccurate and thus the payments are improper or (2) enrollees did not receive needed care for serious conditions reported only on HRAs or HRA-linked chart reviews."[9]  In this context, UnitedHealth Group benefited financially more than any other MAO, which raises serious questions about its practices.  The apparent fraud, waste, and abuse at issue is simply unacceptable and harms not only Medicare beneficiaries, but also the American taxpayer.

For Congress and the American public to better understand UnitedHealth Group's billing practices, please provide answers to the following questions no later than March 10, 2025:

1. What steps has UnitedHealth Group taken to review all diagnoses submitted to CMS for its Medicare Advantage enrollees ("enrollees") that were identified only by HRAs or chart reviews (either manual or artificial intelligence) and to identify all submitted diagnoses that are obscure, irrelevant, or inaccurate? Quantify the number and amount of inappropriate payments identified as a result of these actions. Provide all records.[10]

2. Provide all records that relate to the compliance program that UnitedHealth Group had in place from 2019-2024 to monitor the accuracy and appropriateness of the diagnosis codes submitted to CMS for enrollees, including the design and results of all audits conducted.

3. Provide all training manuals and guidance documents for conducting HRAs and manual chart reviews, a list of all software used during the course of an HRA and a manual chart review, and the logic rules for all electronic decision support tools embedded in the software.  Does UnitedHealth Group use artificial intelligence to conduct the aforementioned processes?  Are all diagnoses identified by artificial intelligence confirmed by a trained medical record reviewer?

4. Provide all policies and procedures for obtaining diagnostic confirmation from an enrollee's primary care provider and ensuring the receipt of treatment for a new diagnosis identified by an HRA or a chart review.  Provide all documentation related to compliance audits of this process.

Thank you for your prompt review and response.  If you have any questions, please contact Tucker Akin with my Committee staff at (202) 224-5225.

Sincerely,

Charles E. Grassley
Chairman
Committee on the Judiciary

[9] *Id.*
[10] Records" include any written, recorded, or graphic material of any kind, including letters, memoranda, reports, notes, electronic data (e-mails, email attachments, and any other electronically-created or stored information), calendar entries, inter-office communications, meeting minutes, phone/voice mail or recordings/records of verbal communications, and drafts (whether or not they resulted in final documents).