# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>UNITEDHEALTH GROUP INC., et al., )<br><br>Defendants. ) | Civ. No. 24-cv-1743 (JMB/DTS)<br><br>CLASS ACTION<br><br>LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE A SECOND SUPPLEMENTAL CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |

4919-8780-2438.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   SUMMARY OF THE RELEVANT ALLEGATIONS ........................................... 3

III.  RELEVANT PROCEDURAL HISTORY ................................................... 4

IV.  RECENT DEVELOPMENTS AFTER PLAINTIFF REQUESTED LEAVE TO SUPPLEMENT ITS PLEADINGS AND FILE THE SFAC ON MAY 5, 2025 ....................................................................................................... 6

V.   ARGUMENT ........................................................................................ 7

    A.   Supplementing the SFAC Under Federal Rule of Civil Procedure 15(d) Is Proper Because the New Allegations Arise from Events that Occurred After the Proposed SFAC Was Filed ........................................... 9

    B.   Plaintiff Has Not Engaged in Any Undue Delay ....................................... 10

    C.   There Is No Prejudice to Defendants ........................................................... 11

    D.   The Proposed SSCC Is Not Offered in Bad Faith ....................................... 12

    E.   The Proposed SSCC Is Not Futile .............................................................. 13

VI.  CONCLUSION ..................................................................................... 17

4919-8780-2438.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Andrade Garcia v. Columbia Med. Ctr. of Sherman*,
996 F. Supp. 605 (E.D. Tex. 1998).............................................................. 11

*Bd. of Trs. of the Auto. Indus. Welfare Fund v. Groth
Oldsmobile/Chevrolet, Inc.*,
2010 WL 760452 (N.D. Cal. Mar. 4, 2010)................................................. 14

*Becker v Univ. of Neb. at Omaha*,
191 F.3d 904 (8th Cir. 1999) ...................................................................... 14

*Bell v. Allstate Life Ins. Co.*,
160 F.3d 452 (8th Cir. 1998) ................................................................. 11, 12

*Dale v. Tjeerdsma*,
2015 WL 1624854 (D.S.D. Apr. 13, 2015) .................................................. 8

*Dekker v. Cenlar FSB, CitiMortgage, Inc.*,
2021 WL 2950143 (D. Minn. July 14, 2021) ............................................... 8

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..................................................................................... 14

*ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*,
355 F. Supp. 3d 785 (D. Minn. 2019).......................................................... 12

*Fair Isaac Corp. v. Experian Info. Sols. Inc.*,
2009 WL 10677527 (D. Minn. Feb. 9, 2009) ........................................... 8, 9

*Fed. Ins. Co. v. Sammons Fin. Grp., Inc.*,
320 F.R.D. 192 (S.D. Iowa 2013) ............................................................... 12

*In re Alphabet, Inc. Sec. Litig.*,
2023 WL 2277074 (N.D. Cal. Feb. 28, 2023) ............................................. 10

*In re Cassava Scis., Inc. Sec. Litig.*,
2025 WL 1465045 (W.D. Tex. May 21, 2025) ............................................ 10

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
403 F. Supp. 3d 712 (D. Minn. 2019)..................................................... 13, 17

4919-8780-2438.v1

**Page**

*In re EpiPen Direct Purchaser Litig.*,
   2021 WL 4892231 (D. Minn. Oct. 20, 2021) ........................................................ 10, 11

*In re Facebook, Inc. Sec. Litig.*,
   87 F.4th 934 (9th. Cir. 2023) ...................................................................... 15

*In re Resideo Techs., Inc., Sec. Litig.*,
   2021 WL 1195740 (D. Minn. Mar. 30, 2021) ............................................................ 16

*In re St. Jude Med., Inc. Sec. Litig.*,
   836 F. Supp. 2d 878 (D. Minn. 2011) ................................................................. 14, 15

*Jewish Fed'n of Lincoln, Inc. v. Rosenblatt*,
   2018 WL 6171816 (D. Neb. Nov. 26, 2018) ................................................................. 11

*McAdams v. McCord*,
   584 F.3d 1111 (8th Cir. 2009) ...................................................................... 14

*Netbula, LLC v. Distinct Corp.*,
   212 F.R.D. 534 (N.D. Cal. 2003) .................................................................. 14

*Perez v. Target Corp.*,
   2024 WL 4804656 (D. Minn. Nov. 15, 2024) (Bryan, J.) ........................................... 13

*Pinnacle Commc'ns Int'l, Inc. v. Am. Fam. Mortg. Corp.*,
   2005 WL 8164742 (D. Minn. Feb. 16, 2005) ........................................................ 13, 14

*Pub. Emps. Ret. Sys. of Miss., Puerto Rico Tchrs. Ret.*
   *Sys. v. Amedisys, Inc.*,
   769 F.3d 313 (5th Cir. 2014) ...................................................................... 13

*Reuter v. Jax Ltd., Inc.*,
   711 F.2d 918 (8th Cir. 2013) ...................................................................... 9

*Robinson v. Midwest Division-RMC, LLC*,
   2020 WL 2151880 (W.D. Mo. May 5, 2020) ............................................................ 11

*Rose v. Lincoln Benefit Life Co.*,
   2021 WL 3418551 (D. Minn. Aug. 5, 2021) ........................................................... 9

*Sanders v. Clemco Indus.*,
   823 F.2d 214 (8th Cir. 1987) ...................................................................... 11

- iii -

**Page**

*Schlief v. Nu-Source, Inc.*,
    2011 WL 13140709 (D. Minn. Aug. 22, 2011) ............................................................ 13

*Singer v. Reali*,
    883 F.3d 425 (4th Cir. 2018) ..................................................................................... 13

*Slavkov v. Fast Water Heater Partners I, LP*,
    2015 WL 5071933 (N.D. Cal. Aug. 27, 2015) ............................................................ 14

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) .................................................................................................... 13

*United States v. Vorachek*,
    563 F.2d 884 (8th Cir. 1977) ....................................................................................... 9

*White v. Crosby, City of*,
    2018 WL 11512339 (D.N.D. Nov. 20, 2018) ................................................................ 8

*Wizards of the Coast LLC v. Cryptozoic Ent. LLC*,
    309 F.R.D. 645 (W.D. Wash. 2015) ........................................................................... 12

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 8(a)(2) ................................................................................................................. 14
    Rule 12(b)(6) ............................................................................................................... 13
    Rule 15 .......................................................................................................................... 8
    Rule 15(a) ...................................................................................................................... 8
    Rule 15(a)(1)(B) ............................................................................................................ 5
    Rule 15(a)(2) ............................................................................................................... 11
    Rule 15(d) ..............................................................................................................*passim*

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 15(d), Lead Plaintiff California Public Employees' Retirement System ("CalPERS" or "Plaintiff") respectfully submits this memorandum of law in support of its Motion for Leave to File a Second Supplemental Consolidated Complaint for Violations of the Federal Securities Laws (the "Motion").  Rule 15(d) allows parties "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented" with leave of court.  Fed. R. Civ. P. 15(d).

Plaintiff seeks leave to file a Second Supplemental Consolidated Complaint ("SSCC") adding new allegations arising from events that have occurred since Plaintiff sought leave to file its Supplemental First Amended Consolidated Complaint for Violations of the Federal Securities Laws (ECF 110) ("SFAC") on May 5, 2025.[1]  Plaintiff seeks to supplement the SFAC by adding allegations regarding: (1) the May 13, 2025 departure of UnitedHealth CEO Andrew Witty[2]; (2) the Company's May 13, 2025 announcement that it would be suspending its prior-issued 2025 earnings guidance; (3) the May 14, 2025 announcement by the *WSJ* that the DOJ has launched a criminal investigation into UnitedHealth's Medicare Advantage business; (4) the May 21, 2025 partial corrective disclosure following the release of an

---

[1]    Plaintiff sought leave to amend its pleadings and file the SFAC on May 5, 2025.  ECF 102-107.  The Court granted Plaintiff's motion to supplement the First Amended Consolidated Complaint for Violations of the Federal Securities Laws on May 14, 2025 (ECF 109) and the SFAC was filed that same day (ECF 110).

[2]    All capitalized terms not otherwise defined herein have the same meaning as set forth in the SFAC.  Additionally, unless otherwise noted, all "¶__" or "¶¶__" citations herein are references to the SFAC, citations are omitted, and emphasis is added.

- 1 -

HSBC Global Research ("HSBC") report that downgraded UnitedHealth stock in response to disclosures concerning Defendants' Medicare Advantage fraud and an article by *The Guardian* concerning UnitedHealth's Medicare Advantage scheme; (5) additional misleading statements relating to *The Guardian* report; (6) the May 21, 2025 CMS announcement of further reforms of Medicare Advantage, which analysts connected to UnitedHealth's "aggressive" Medicare Advantage practices; (7) a June 2, 2025 *WSJ* article which revealed, on the basis of internal Company documents, longstanding knowledge within UnitedHealth that CMS 2023 healthcare reforms would adversely impact the Company's Medicare Advantage business; (8) additional misleading statements made by Defendants regarding the impact of CMS's 2023 reforms; (9) announcements by Defendants on June 2, 2025 and June 4, 2025 responding to the allegations of fraud against the Company; and (10) the June 10, 2025 disclosure of yet another Congressional investigation relating to UnitedHealth's Medicare Advantage fraud.  A redline of the proposed SSCC showing the new, supplemental information, as well as a clean copy with supporting Exhibits 1-21 attached thereto, are attached as Exhibits A and B to the concurrently filed Declaration of Tim Sullivan in Support of Lead Plaintiff's Motion for Leave to File a Second Supplemental Consolidated Complaint for Violations of the Federal Securities Laws ("Sullivan Declaration").[3]

---

[3] *See* Ex. A (a redline copy of the proposed SSCC incorporating the new material findings and information); Ex. B (a clean copy of the proposed SSCC attaching a new investigative report as Exhibit 17).

- 2 -

4919-8780-2438.v1

Plaintiff and Defendants, through their counsel of record, have met and conferred regarding this Motion. Defendants received a redline copy of the proposed SSCC on June 9, 2025, and, after reviewing, will inform the Court as to their position regarding the Motion.

## II.    SUMMARY OF THE RELEVANT ALLEGATIONS

This securities fraud action alleges that UnitedHealth, one of the largest and most powerful healthcare conglomerates in the country, abused its size and power in order to defraud the American healthcare system and UnitedHealth investors, which investors were harmed as Defendants' fraudulent misconduct was exposed to the market. The allegations relevant to this Motion are that Defendants were actively engaged in a scheme to inflate their Medicare Advantage profits by fraudulently diagnosing Medicare Advantage plan members with various risk-adjusting conditions that caused Medicare to overpay UnitedHealth for diagnoses that its patients did not actually have which resulted in billions of dollars of improper revenue for the Company at the expense of the Federal Government and, ultimately, American taxpayers. ¶¶58-166. In 2021 alone, UnitedHealth received $8.7 billion in payments from the Federal Government for high-value diagnoses *that no doctor treated* – an amount equal to more than 50% of the Company's net income. ¶104. Plaintiff alleges that UnitedHealth, through its army of doctors, nurses, and risk adjustment personnel, engaged in a scheme whereby UnitedHealth encouraged, and in some cases coerced, unnecessary, unwanted, and nonexistent diagnoses to the charts of Medicare Advantage patients, thereby increasing the risk score for that patient and, in turn, increasing the amount that UnitedHealth would be paid by the CMS. ¶¶58-166.

4919-8780-2438.v1

The Company's fraud and unsustainable business practices connected to its Medicare Advantage business have begun to unravel, as its ability to perpetrate the Medicare Advantage scheme – which brought in billions of dollars each year – ran up against healthcare reforms designed specifically to put an end to such practices. ¶¶22, 104. On April 17, 2025, UnitedHealth slashed its 2025 earnings projections partially as a result of the financial impact the reforms had on the Medicare Advantage scheme. ¶¶229-230. Then, on May 13, 2025, the Company cancelled its 2025 earnings projections altogether, in a move that financial analysts linked to the Company's Medicare Advantage scheme. Ex. A, ¶¶248-250, 419-426. This was followed by a *WSJ* article on May 14, 2025, which revealed that the Company was the subject of yet another DOJ investigation, this time for ***criminal*** Medicare fraud. Ex. A, ¶¶251-252, 427-437. Each of these announcements sent the Company's stock price tumbling. *See* ¶¶357-370; Ex. A, ¶¶390-445.

## III.   RELEVANT PROCEDURAL HISTORY

CalPERS filed its Consolidated Complaint for Violations of the Federal Securities Laws on October 4, 2024 (ECF 45) (the "Consolidated Complaint"). Since filing the Consolidated Complaint, developments with regard to multiple DOJ and regulatory investigations against the Company and a stream of new public information as a result of the diligent investigative reporting of outlets like the *WSJ* and *STAT News* have resulted in revelations that necessitated Plaintiff updating its allegations.

First, following the release of a report by the Office of Inspector General for the U.S. Department of Health and Human Services and two investigative reports by *STAT News* that exposed damning details of the Medicare Advantage scheme, Plaintiff moved to supplement

- 4 -

its complaint on November 22, 2024. *See* ECF 46-51. The Court granted Plaintiff's request on November 25, 2024 (ECF 53), and Plaintiff filed its Supplemental Consolidated Complaint for Violations of the Federal Securities Laws the same day (ECF 54).

Then, on February 21, 2025, the *WSJ* revealed that the DOJ launched a civil fraud investigation into UnitedHealth's Medicare billing practices, which will "examin[e] the [C]ompany's practices for recording diagnoses that trigger extra payments to its Medicare Advantage plans." ¶217. Following the release of this news, UnitedHealth's stock price significantly declined, falling $36 per share. ¶¶353-356. On March 21, 2025, within 21 days of Defendants' Motion to Dismiss Plaintiff's Supplemental Consolidated Complaint (ECF 90) ("Motion to Dismiss" or "Mtn."), Plaintiff filed its First Amended Consolidated Complaint for Violations of the Federal Securities Laws (ECF 97) ("FAC") as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B).

Further, on April 17, 2025, the Company announced that it would be slashing its earnings projections for the 2025 fiscal year, blaming problems in the Company's Medicare Advantage segment. ¶¶229-230. On this news, the price of UnitedHealth stock dropped by more than 20%. Plaintiff again moved to supplement its pleadings and file the SFAC on May 5, 2025. ECF 102-107. Defendants did not oppose Plaintiff's proposed supplement (ECF 108) and the Court granted Plaintiff's motion to supplement the FAC on May 14, 2025 (ECF 109). The SFAC was filed the same day. ECF 110.

Plaintiff now seeks leave to supplement the SFAC as a result of the new critical facts that have recently come to light.

4919-8780-2438.v1

## IV.   RECENT DEVELOPMENTS AFTER PLAINTIFF REQUESTED LEAVE TO SUPPLEMENT ITS PLEADINGS AND FILE THE SFAC ON MAY 5, 2025

On Tuesday, May 13, 2025, just a week after Plaintiff requested leave to file the SFAC (and just one day before the Court granted leave), UnitedHealth shocked investors by announcing the sudden departure of CEO (and named Defendant in the above-captioned action) Andrew Witty.  Ex. A, ¶¶248-250.  In a press release titled "UnitedHealth Group Announces Leadership Transition," the Company announced that Witty was stepping down effective immediately "for personal reasons."  Ex. A, ¶248.  In the same release, the Company announced that it would be suspending the reduced 2025 guidance that it had announced on April 17, 2025, due to continued problems impacting the Company's Medicare business.  *Id.*  On this news, UnitedHealth stock plummeted by close to $70 per share.  Ex. A, ¶¶419-426.

The day after Witty's "resignation" and the Company's cancellation of its 2025 earnings projections, on May 14, 2025 the *WSJ* reported that the DOJ "is investigating UnitedHealth Group for possible ***criminal*** Medicare fraud related to its Medicare Advantage business."  Ex. A, ¶¶251-252.[4]  The news of the DOJ criminal investigation caused yet another sharp drop in UnitedHealth stock, causing the price to decline by nearly 11%, or just over $30 per share.  Ex. A, ¶¶427-437.

On May 21, 2025, *The Guardian* reported that UnitedHealth "has secretly paid nursing homes thousands in bonuses to help slash hospital transfers" in a nationwide scheme

---

[4]   *See also* Christopher Weaver & Anna Wilde Matthews, *UnitedHealth Group Is Under Criminal Investigation for Possible Medicare Fraud*, Wall St. J. (May 15, 2025), https://www.wsj.com/us-news/unitedhealth-medicare-fraud-investigation-df80667f.

4919-8780-2438.v1

designed to allow the Company to pocket a greater percentage of Medicare Advantage payments. Ex. A, ¶¶254-255. That same day, HSBC significantly downgraded its rating of UnitedHealth stock, changing its rating to reduce from hold, and slashed its price target by 45% – from $490 per share to $270 per share. Ex. A, ¶¶253-255. On this news, the Company's stock declined by over 5%. Ex. A, ¶¶438-444.

Following these disclosures, CMS, on May 21, 2025, announced additional reforms to Medicare Advantage, including a "significant expansion of its auditing efforts for Medicare Advantage (MA) plans." Ex. A, ¶¶126-129, 256-257. Financial analysts connected the CMS reforms to the Company's Medicare Advantage scheme. Ex. A, ¶¶256-257.

On June 2, 2025, UnitedHealth announced that it would be instituting a comprehensive review of the Company's Medicare Advantage coding practices. Ex. A, ¶384. Also on June 2, 2025, the *WSJ* revealed that – according to internal UnitedHealth documents – the Company knew that the 2023 CMS reforms would adversely impact its Medicare Advantage business going back to 2023. Ex. A, ¶¶129, 386-388. On June 4, 2025, the Company announced that it would be cancelling Witty's performance-based restricted stock options. Ex. A, ¶385. Finally, on June 10, 2025, additional Congressional investigations relating to the Company's Medicare Advantage scheme were revealed. Ex. A, ¶389.

## V.    ARGUMENT

Rule 15(d) allows parties "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented" with leave of court. Fed. R. Civ. P. 15(d). Rule 15(d) provides in part: "On

- 7 -

motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Id.* "The purpose of subdivision (d) is to promote as complete an adjudication of the dispute between the parties as is possible." 6A Charles A. Wright et al., *Federal Practice and Procedure* §1504 (3d ed. 2024).

"'Leave to file a supplemental complaint under Rule 15(d) rests with the court's discretion and should be freely granted'" barring any "'undue prejudice or delay.'" *White v. Crosby, City of*, 2018 WL 11512339, at *2 (D.N.D. Nov. 20, 2018) (quoting *Dale v. Tjeerdsma*, 2015 WL 1624854, at *2 (D.S.D. Apr. 13, 2015)). This discretion is "subject to the same standard" as motions for leave to amend under Rule 15(a). *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 2009 WL 10677527, at *14 n.7 (D. Minn. Feb. 9, 2009) (collecting cases finding that motions to amend under Rule 15(a) and motions to supplement under Rule 15(d) are subject to the same standard). Thus, in keeping "'with the overarching flexibility of Rule 15, courts customarily have treated requests to supplement under Rule 15(d) liberally. This liberality is reminiscent of the way in which courts have treated requests to amend under Rule 15(a).'" *Dekker v. Cenlar FSB, CitiMortgage, Inc.*, 2021 WL 2950143, at *1 (D. Minn. July 14, 2021).

Importantly, while the standard for requests for leave to supplement under Rule 15(d) is virtually identical as that for leave to amend under Rule 15(a), the content of such requests is different. "'An amended pleading is designed to include matters occurring before the filing of the bill but either overlooked or not known at the time. A supplemental pleading, however, is designed to cover matters subsequently occurring but pertaining to the original

- 8 -

4919-8780-2438.v1

cause.'"  *United States v. Vorachek*, 563 F.2d 884, 886 (8th Cir. 1977).  This is consistent with the plain language of the rule itself.  *See* Fed. R. Civ. P. 15(d).

Courts have generally denied leave to supplement only "'if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'"  *Rose v. Lincoln Benefit Life Co.*, 2021 WL 3418551, at *1 (D. Minn. Aug. 5, 2021) (quoting *Reuter v. Jax Ltd., Inc.*, 711 F.2d 918, 922 (8th Cir. 2013)) (granting leave to supplement, and noting that leave to supplement is subject to the same standard as leave to amend); *see also Fair Isaac*, 2009 WL 10677527, at *14 n. 7 (collecting cases stating that leave to amend and leave to supplement are subject to the same standard).  As discussed below, Plaintiff's request should be granted as none of these circumstances apply here.

> **A.    Supplementing the SFAC Under Federal Rule of Civil Procedure 15(d) Is Proper Because the New Allegations Arise from Events that Occurred After the Proposed SFAC Was Filed**

"'A supplemental pleading . . . is designed to cover matters subsequently occurring but pertaining to the original cause.'"  *Vorachek*, 563 F.2d at 886.

In keeping with Rule 15(d), the new allegations arise from events and information that emerged shortly after Plaintiff first filed the proposed SFAC with the Court in conjunction with its motion for leave to supplement prior pleadings on May 5, 2025.  ECF 102-107.  These new allegations consist of the May 13, 2025 news of Witty's departure and the Company's suspension of its 2025 earnings projections which constituted a partial corrective disclosure and caused the Company's stock to drop by nearly 18%.  Ex. A, ¶¶248-250, 419-

- 9 -

426. The new allegations also include: (1) the May 14, 2025 partial corrective disclosure consisting of the revelation that UnitedHealth is the subject of a criminal DOJ investigation related to Medicare fraud and the resulting 11% drop in UnitedHealth stock price that followed (Ex. A, ¶¶251-252, 427-437); (2) the May 21, 2025 HSBC report downgrading UnitedHealth's stock to reduce from hold and slashing the target price by nearly 50% (Ex. A, ¶¶253, 438-444); (3) the May 21, 2025 *Guardian* article reporting additional details of UnitedHealth's Medicare Advantage fraud (Ex. A, ¶¶135-140); (4) the May 21, 2025 CMS announcement of additional Medicare reforms aimed at upcoding (Ex. A, ¶¶126-129); (5) the June 2, 2025 *WSJ* article disclosing that UnitedHealth had knowledge that CMS 2023 healthcare reforms would adversely impact its Medicare Advantage business (Ex. A, ¶¶129, 386-388); (6) the June 2, 2025 and June 4, 2025 UnitedHealth announcements regarding internal Company reforms and the cancellation of Witty's performance-based stock options (Ex. A, ¶¶384-385); and (7) the June 10, 2025 disclosure of yet another Congressional investigation relating to UnitedHealth's Medicare Advantage fraud (Ex. A, ¶389). *See, e.g.*, *In re Alphabet, Inc. Sec. Litig.*, 2023 WL 2277074 (N.D. Cal. Feb. 28, 2023) (granting motion to supplement where plaintiff sought to add an additional corrective disclosure that occurred following the filing of the prior pleadings); *see also In re Cassava Scis., Inc. Sec. Litig.*, 2025 WL 1465045, at *2-*4 (W.D. Tex. May 21, 2025) (same).

## B.    Plaintiff Has Not Engaged in Any Undue Delay

Undue delay exists where the moving party has engaged in "dilatory tactics." *In re EpiPen Direct Purchaser Litig.*, 2021 WL 4892231, at *3-*4 (D. Minn. Oct. 20, 2021). When determining whether a party moving for leave to amend has engaged in delay that

- 10 -

would justify denial of leave under Federal Rule of Civil Procedure 15(a)(2), courts distinguish between "*mere* delay (which would be no bar to the Court granting the motion to amend) [and] . . . *undue* delay (which might be a bar)." *Id.* (emphasis in original).

Here, Plaintiff has not engaged in any delay, undue or otherwise. There is not even a deadline in place for when Plaintiff must file an amendment. *See id.* at \*4 (noting that courts have found no undue delay "even though the party filed the motion on both the last day allowed in the scheduling order and on the day that discovery closed") (citing *Andrade Garcia v. Columbia Med. Ctr. of Sherman*, 996 F. Supp. 605, 609 (E.D. Tex. 1998)). Moreover, Plaintiff's Motion comes just days after learning of the new facts, which were made public between May 13, 2025 and June 10, 2025. *See generally* Ex. A.

## C.    There Is No Prejudice to Defendants

"[E]ven if the court [determines that there is] . . . undue delay, '[d]elay alone is insufficient justification for denying a motion to amend; **prejudice to the nonmovant must also be shown**.'" *EpiPen*, 2021 WL 4892231, at \*5 (quoting *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998)). "The burden of proof to show prejudice rests with the party opposing [the] amendment." *Robinson v. Midwest Division-RMC, LLC*, 2020 WL 2151880, at \*1 (W.D. Mo. May 5, 2020) (citing *Sanders v. Clemco Indus.*, 823 F.2d 214, 217 (8th Cir. 1987)).

Defendants, in order to bear their burden, must demonstrate that the proposed supplement would result in their expenditure of "significant additional resources on discovery and trial preparation, or significantly delay resolving the dispute." *Jewish Fed'n of Lincoln, Inc. v. Rosenblatt*, 2018 WL 6171816, at \*1 (D. Neb. Nov. 26, 2018); *see also*

- 11 -

4919-8780-2438.v1

*Bell*, 160 F.3d at 454 ("[W]hen ***late tendered*** amendments involve new theories of recovery and impose additional discovery requirements, courts are less likely to find an abuse of discretion [in denying leave to amend] due to the prejudice involved."). This, Defendants cannot do. None of these potential sources of prejudice apply here. Thus, "any concerns related to either undue delay or unfair prejudice" are nonexistent. *Fed. Ins. Co. v. Sammons Fin. Grp., Inc.*, 320 F.R.D. 192, 197-98 (S.D. Iowa 2013) (granting leave to amend where the nonmoving party "will have ample opportunity to conduct appropriate discovery and assert its defenses" as to the proposed amendment).

### D. The Proposed SSCC Is Not Offered in Bad Faith

"[B]ad faith requires more than mere negligence or bad judgment; it is the 'conscious doing of a wrong because of dishonest purpose or moral obliquity.'" *ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*, 355 F. Supp. 3d 785, 791 (D. Minn. 2019) (quoting *Wizards of the Coast LLC v. Cryptozoic Ent. LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015)). "Given the liberal policy favoring amendment . . . the burden of demonstrating bad faith falls upon the party opposing amendment." *ecoNugenics*, 355 F. Supp. 3d at 791.

Defendants cannot carry this burden. Plaintiff proposes the supplement to incorporate information revealed after Plaintiff sought leave to file the SFAC (and related-information relevant to the new information), including information which bolsters Plaintiff's allegations in light of arguments made by Defendants in their Motion to Dismiss. *See supra* at 8-9; Mtn. at 6-10. For example, Defendants argued that the disclosure of a DOJ investigation cannot

- 12 -

satisfy the loss causation pleading requirement. Mtn. at 8-10.[5] The proposed SSCC alleges, among other things, an additional partial corrective disclosure – Witty's May 13, 2025 "resignation" and the concurrent cancellation of the 2025 earnings projections (Ex. A, ¶¶419-426) – which further support Plaintiff's loss causation allegations. Notably, such a purpose was recently endorsed by Judge Bryan. *See Perez v. Target Corp.*, 2024 WL 4804656, at *14 (D. Minn. Nov. 15, 2024) ("Plaintiffs also could have filed a motion for leave to amend, pursuant to [Local] Rule 15.1(b), upon reviewing the arguments Defendants raised in their motion to dismiss . . . .") (Bryan, J.).

### E. The Proposed SSCC Is Not Futile

The standard for determining the legal sufficiency of a proposed amendment, or supplement in this case, is the same as that used for evaluating a pleading under Federal Rule of Civil Procedure 12(b)(6). *Schlief v. Nu-Source, Inc.*, 2011 WL 13140709, at *1 (D. Minn. Aug. 22, 2011). Under this standard, a court must "consider the complaint in its entirety," "accept all factual allegations . . . as true," and construe those allegations in the light most favorable to the plaintiff. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007). Thus, supplementing under Rule 15(d) should be allowed "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of its claim that would entitle it to relief." *Pinnacle Commc'ns Int'l, Inc. v. Am. Fam. Mortg. Corp.*, 2005 WL 8164742, at *2

---

[5]    Defendants are mistaken about the law on this issue. *See, e.g.*, *In re CenturyLink Sales Pracs. & Sec. Litig.*, 403 F. Supp. 3d 712, 735 (D. Minn. 2019) (corrective disclosures can come in many forms); *Singer v. Reali*, 883 F.3d 425 (4th Cir. 2018) (the disclosure of a government investigation, including what was being investigated, satisfied loss causation); *Pub. Emps. Ret. Sys. of Miss., Puerto Rico Tchrs. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 323-25 (5th Cir. 2014) (viewed holistically, disclosure of various government investigations adequately pleads loss causation).

4919-8780-2438.v1

(D. Minn. Feb. 16, 2005); *see also Becker v Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999) ("a motion to amend should be denied on the merits 'only if it asserts ***clearly frivolous*** claims or defenses'"). "Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003); *see also Bd. of Trs. of the Auto. Indus. Welfare Fund v. Groth Oldsmobile/Chevrolet, Inc.*, 2010 WL 760452, at *3 (N.D. Cal. Mar. 4, 2010) ("In general, the futility of an amendment is better tested in a motion to dismiss for failure to state a claim or a summary judgment motion."); *Slavkov v. Fast Water Heater Partners I, LP*, 2015 WL 5071933, at *2 (N.D. Cal. Aug. 27, 2015) (finding no futility, and holding that "'"[t]he merits or facts of a controversy are not properly decided in a motion for leave to amend and should instead be attacked by a motion to dismiss for failure to state a claim or for summary judgment"'").

Futility is not an issue here, because the supplemental allegations adequately allege loss causation as to the new partial corrective disclosures on May 13, 2025, May 14, 2025, and May 21, 2025. "To adequately plead loss causation, the complaint must state facts showing a causal connection between the defendant's misstatements and the plaintiff's losses." *In re St. Jude Med., Inc. Sec. Litig.*, 836 F. Supp. 2d 878, 908 (D. Minn. 2011) (citing *McAdams v. McCord*, 584 F.3d 1111, 1114 (8th Cir. 2009)). "The pleading of loss causation is subject only to 'the simple test' of Rule 8(a)(2)'s requirement of a short and plain statement of the claim." *St. Jude*, 836 F. Supp. 2d at 908 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)). As the proposed SSCC alleges, on May 13, 2025, UnitedHealth's stock price dropped nearly 18% in response to Defendants' announcement

- 14 -

that UnitedHealth cancelled 2025 earnings guidance and the sudden departure of Witty. Ex. A, ¶¶419-426. Financial analysts connected the Company's May 13, 2025, disclosures to the ongoing difficulties in the Company's Medicare Advantage business that had caused a prior reduction in earnings projections on April 17, 2025. *Id.*; *see St. Jude*, 836 F. Supp. 2d at 908-09 (finding that a reduction in guidance was sufficiently pled as a corrective disclosure); *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 955-57 (9th. Cir. 2023) (same), *cert. granted in part sub nom. Facebook, Inc. v. Amalgamated Bank*, _ U.S. _,144 S. Ct. 2629 (2024), *and cert. dismissed as improvidently granted sub nom. Facebook, Inc. v. Amalgamated Bank*, 604 U.S. 4 (2024).

There also can be no dispute that the May 14, 2025 partial disclosure is adequately pled. That disclosure consisted of the revelation that the DOJ has opened a criminal investigation into the Company related to the very conduct that Plaintiff alleges Defendants concealed from investors – namely that the Company was perpetrating a fraudulent scheme in its Medicare Advantage business. *See* ¶¶58-166. A disclosure that the Company was being investigated for "possible criminal fraud related to its Medicare Advantage business" is clearly related to these allegations such that the May 14, 2025 disclosure partially revealed Defendants' fraud to the market. Ex. A, ¶429. The same is true for the May 21, 2025 partial disclosures. Both the report from *The Guardian* and the HSBC report were unequivocally related to Defendants' Medicare Advantage fraud. *See, e.g.*, Ex. A, ¶¶438-444 (HSBC downgraded the Company's stock as a result of analyst concern regarding the "alleged Medicare fraud").

- 15 -

Furthermore, the SSCC's additional statements relating to the newly revealed facts meet the pleading standards and thus are not futile. "To meet the PSLRA's heightened pleading requirement for falsity, a plaintiff must plead the who, what, when, where, and how of the misleading statements or omissions." *In re Resideo Techs., Inc., Sec. Litig.*, 2021 WL 1195740, at *4 (D. Minn. Mar. 30, 2021). In addition, a plaintiff "must allege why the misleading statements or omissions were false when they were made." *Id.* The SSCC easily meets these requirements. *See generally* Ex. A. For instance, the SSCC alleged that Defendants' statements regarding the expected impact of CMS 2023 Medicare Advantage reforms were false, in part, on the basis of a June 2, 2025 *WSJ* article which revealed that: "UnitedHealth had long known the Medicare payment change would be challenging," and that an "internal Optum analysis of around 900,000 patients from the end of 2023 . . . projected that the new billing rules would cut back sharply on diagnoses of chronic health conditions that led to the higher payments" according to internal Company documents. Ex. A, ¶¶129, 386.[6]

Last, the supplemental allegations bolster and expand on Plaintiff's current scienter allegations, thereby negating any futility challenge. Indeed, the new facts – the CEO stepping down abruptly for "personal reasons," the Company simultaneously swiftly abandoning its financial guidance, the *WSJ* revealing the criminal investigation the very next day, the concurrent announcements of further Medicare Advantage reforms, internal Company Medicare Advantage reforms, the cancellation of Witty's performance-based stock

---

[6]     And, the statements regarding Medicare Advantage hospitalization rates were false, in part, based on *The Guardian* report detailed above. Ex. A, ¶¶135-140.

4919-8780-2438.v1

options, and internal documents demonstrating that Witty was optimistic with investors "even as problems stacked up," add to the strong inference of scienter. Ex. A, ¶¶380-385, 387-388; *CenturyLink*, 403 F. Supp. 3d at 734 (unexpected resignations, along with other evidence, supported a strong inference of scienter).

## VI.   CONCLUSION

For all these reasons, Plaintiff respectfully requests that the Court grant Plaintiff leave to file the clean version of the proposed SSCC attached as Ex. B to the concurrently filed Sullivan Declaration, including Exhibits 1-21 attached thereto.

DATED:  June 12, 2025                Respectfully submitted,

TM SULLIVAN PLLC
TIM SULLIVAN, MN 391528
JAMES PORADEK, MN 290488 (OF COUNSEL)


                                     s/ Tim Sullivan
                                     TIM SULLIVAN

225 South Sixth Street, Suite 3900
Minneapolis, MN  55402
Telephone:  773/919-8667
tim@tmsull.com
jporadek@tmsull.com

Local Counsel for Lead Plaintiff

- 17 -

4919-8780-2438.v1

ROBBINS GELLER RUDMAN & DOWD LLP
DARREN J. ROBBINS (admitted *pro hac vice*)
SAM S. SHELDON (admitted *pro hac vice*)
LAURIE L. LARGENT (admitted *pro hac vice*)
ROBERT R. HENSSLER JR. (admitted *pro hac vice*)
JEFFREY J. STEIN (admitted *pro hac vice*)
JACK ABBEY GEPHART (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
darrenr@rgrdlaw.com
ssheldon@rgrdlaw.com
llargent@rgrdlaw.com
bhenssler@rgrdlaw.com
jstein@rgrdlaw.com
jgephart@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 18 -