# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civ. No. 24-cv-1743 (JMB/DTS) |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| | ) | LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO SERVE A PRESERVATION SUBPOENA ON NON-PARTY SEMLER SCIENTIFIC, INC. |
| vs. | ) ) | |
| UNITEDHEALTH GROUP INC., et al., | ) ) | |
| Defendants. | ) ) | |

4908-7357-1144.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   RELEVANT FACTUAL BACKGROUND ........................................................... 3

III.  LEGAL STANDARD ......................................................................................... 6

IV.   ARGUMENT ...................................................................................................... 7

    A.    The Fact that Plaintiff Simply Seeks Preservation – Not Production – of Documents from a Third Party Satisfies the "Exceptional Circumstances" Element ................................................................................. 7

    B.    Plaintiff's Request Is Sufficiently Particularized ......................................... 8

    C.    Plaintiff's Request Is Necessary to Preserve Evidence in the Possession of a Third Party Who May Not Have Notice of This Action ....................................................................................................... 10

V.    CONCLUSION ................................................................................................ 11

- i -

4908-7357-1144.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*In re Delphi Corp.*,
2007 WL 518626 (E.D. Mich. Feb. 15, 2007) ................................................................ 6

*In re Equifax Inc. Sec. Litig.*,
2018 WL 3023278 (N.D. Ga. June 18, 2018) ................................................................ 7

*In re Grand Casinos, Inc. Sec. Litig.*,
988 F. Supp. 1270 (D. Minn. 1997) ..................................................................*passim*

*In re Lernout & Hauspie Sec. Litig.*,
214 F. Supp. 2d 100 (D. Mass. 2002) ......................................................................... 10

*In re Royal Ahold N.V. Sec. & Erisa Litig.*,
220 F.R.D. 246 (D. Md. 2004) ..................................................................................... 8

*In re Tyco Int'l, Ltd., Sec. Litig.*,
2000 WL 33654141 (D.N.H. July 27, 2000) ......................................................... 7, 8, 9

*Koncelik v. Savient Pharms., Inc.*,
2009 WL 2448029 (S.D.N.Y. Aug. 10, 2009) .................................................... 9, 10, 11

*N.Y. State Tchrs' Ret. Sys. v. Gen. Motors Co.*,
2015 WL 1565462 (E.D. Mich. Apr. 8, 2015) ................................................. 7, 8, 9, 10

*Pension Tr. Fund for Operating Eng'rs v. Assisted Living
Concepts, Inc.*,
943 F. Supp. 2d 913 (E.D. Wis. 2013) ...................................................................... 6, 8

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78u-4(b)(3)(B) .......................................................................................................... 2, 6

31 U.S.C.
§3729 ......................................................................................................................... 1, 5

Federal Rules of Civil Procedure
Rule 26(b)(1) .............................................................................................................. 10

4908-7357-1144.v1

**Page**

**LEGISLATIVE HISTORY**
Private Securities Litigation Reform Act of 1995
Pub. L. No. 104-67, 109 Stat. 737 (1995)............................................................*passim*

4908-7357-1144.v1

Lead Plaintiff California Public Employees' Retirement System ("Plaintiff") respectfully moves for ***partial*** relief from the Private Securities Litigation Reform Act of 1995 (the "PSLRA") discovery stay for the limited purpose of serving a preservation subpoena on non-party Semler Scientific, Inc. ("Semler") in order to preserve documents and communications regarding the fraud investigation by the United States Department of Justice (the "DOJ") into Semler's and defendant UnitedHealth Group, Inc.'s ("UnitedHealth" or the "Company") use of QuantaFlo, Semler's flagship product.

Plaintiff and Defendants, through their counsel of record, have met and conferred regarding this motion.[1]  Defendants take no position as to whether the relief sought herein should be granted.

## I.    INTRODUCTION

Semler is a medical device manufacturer, whose principle product is QuantaFlo, which is used prolifically by doctors and nurses in the employ of UnitedHealth to test for peripheral artery disease.  *See infra* §II.  On February 28, 2025, Semler filed its 2024 annual report on Form 10-K with the Securities and Exchange Commission ("SEC") for the fiscal year ending December 31, 2024 (the "FY24 10-K"), in which it announced that, beginning in 2017, Semler had received multiple requests from the DOJ for information in relation to possible violations of the False Claims Act of 1863.  On April 15, 2025, Semler filed a current report on Form 8-K with the SEC which disclosed, among other things, that Semler had offered to settle all claims with the DOJ for just under $30 million.

---

[1]    "Defendants" refers collectively to UnitedHealth, Andrew Witty, Stephen Hemsley, and Brian Thompson.

Here, Plaintiff has alleged that the use of the QuantaFlo device, Semler's only product, was part of the Medicare Advantage scheme that UnitedHealth concealed from the market. *See infra* §II. As such, Semler's documents and communications regarding the fraud investigation by the DOJ are highly relevant to this action. Given this relevance, Plaintiff has a legitimate interest in pursuing discovery from Semler, especially with respect to Semler's relationship with UnitedHealth. But, under the PSLRA, all discovery is stayed "during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. §78u-4(b)(3)(B). While a motion to dismiss is not currently pending, Your Honor previously reasoned that the discovery stay under the PSLRA applies at this procedural posture, where Defendants have indicated that they intend to move to dismiss. ECF 88-89; ECF 116 at 2.

Meanwhile, Semler, as a third party to this litigation, is currently not, to Plaintiff's knowledge, subject to any litigation hold or other preservation order that would prevent Semler from disposing of documents that are relevant to Plaintiff's allegations. Therefore, Plaintiff moves this Court for the limited purpose of serving a preservation subpoena on Semler with respect to specific categories of documents that are discoverable and relevant to Plaintiff's allegations. *See generally* Exhibit A ("Ex. A") attached to the concurrently filed Declaration of Robert R. Henssler Jr. in Support of Lead Plaintiff's Motion to Serve a Preservation Subpoena on Non-Party Semler Scientific, Inc.

Plaintiff's request is squarely in line with the purposes of the PSLRA and the standard under which such relief is analyzed. ***First***, Plaintiff's proposed relief places no pressure on

- 2 -

UnitedHealth to consider a premature settlement as a result of a costly discovery process because: (a) UnitedHealth is not the subject of the proposed subpoena; and (b) the proposed subpoena does not request that any discovery be produced.  *Second*, Plaintiff's request is particularized to specific categories of documents from a specific party, and *third* there is great risk of prejudice to Plaintiff in the event that the request to partially lift the stay is not granted.  Thus, the Court should partially lift the discovery stay for the purpose of serving a preservation subpoena on non-party Semler Scientific.

## II.    RELEVANT FACTUAL BACKGROUND

This securities fraud action alleges that UnitedHealth, one of the largest and most powerful healthcare conglomerates in the Country, abused its size and power in order to defraud the American healthcare system and UnitedHealth investors, thereby harming UnitedHealth investors as Defendants' misconduct was exposed to the market.

The allegations relevant to this motion are that Defendants were actively engaged in a scheme to fraudulently diagnose UnitedHealth's Medicare Advantage plan members with various risk-adjusting conditions that caused Medicare to overpay UnitedHealth for diagnoses that its patients did not actually have, which resulted in billions of dollars of improper revenue for the Company at the expense of the federal government and, ultimately, American taxpayers.  ¶¶58-166.[2]  In 2021 alone, UnitedHealth received $8.7 billion in payments from the federal government for high-value diagnoses *that no doctor treated* – an

---

[2]    All citations to "¶__" or "¶¶__" are to the Supplemental First Amended Consolidated Complaint for Violations of the Federal Securities Laws (ECF 110) (the "SFAC"). Additionally, all capitalized terms not otherwise defined herein have the same meaning as set forth in the SFAC, citations are omitted, and emphasis is added.

4908-7357-1144.v1

amount equal to more than 50% of the Company's net income. ¶104. Plaintiff alleges that UnitedHealth, through its army of doctors, nurses, and risk adjustment personnel, enacted a scheme designed to encourage, and in some cases coerce, unnecessary, unwanted, and nonexistent diagnoses to the charts of UnitedHealth's Medicare Advantage patients, thereby increasing the risk score for that patient and, in turn, increasing the amount that UnitedHealth would be paid by the Centers for Medicare & Medicaid Services. ¶¶65-96, 125-166.

This Medicare Advantage scheme was carried out, in relevant part, through prolific use of the QuantaFlo device produced by Semler. ¶¶79-89, 139, 142-143. During the Class Period, UnitedHealth required its nurses and doctors to use the QuantaFlo device for the diagnosis of peripheral artery disease ("PAD") as a mechanism to generate revenue without regard for medical necessity, even though the device was known for generating false positive diagnoses of PAD. ¶¶79-85. Indeed, despite the fact that the QuantaFlo device was not indicated by the FDA for use as a standalone diagnostic device, and that medical guidelines actually recommend against widespread screening for PAD, UnitedHealth mandated widespread use of the device among its doctors and nurses. ¶¶79, 88. This practice was extremely lucrative for UnitedHealth. Each additional PAD diagnosis resulted in additional payments to UnitedHealth of about $2,500 per year, per patient. ¶80. From 2019 through 2021, alone, UnitedHealth diagnosed this condition 568,000 times following in-home visits by its nurses to Medicare Advantage members, resulting in *$1.4 billion* in payments. ¶82.

UnitedHealth has come under intense scrutiny for its alleged Medicare Advantage scheme. It is the subject of several fraud investigations by the DOJ and an investigation by the United States Senate (¶¶19, 217-220, 331-334), and on May 13, 2025, former Chief

- 4 -

4908-7357-1144.v1

Executive Officer Andrew Witty unexpectedly stepped down from his role effective immediately in the midst of the Company's cancellation of its 2025 earnings projections,[3] and the disclosure of a DOJ *criminal* investigation into the Company's Medicare Advantage business.[4]

Relatedly, according to its FY24 10-K, Semler, whose only product is the QuantaFlo device, since July 2017, has received a series of civil investigative demands from the DOJ related to potential violations of the federal False Claims Act of 1863 for "marketing tests on devices that use photoplethysmography technology as reimbursable by Medicare in alleged contravention of applicable laws and regulations." FY24 10-K at 62. According to its quarterly report on Form 10-Q filed with the SEC on May 13, 2025 (the "1Q25 10-Q"), Semler has offered to settle with the DOJ for nearly $30 million, but has not yet reached a final agreement with the DOJ. 1Q25 10-Q at 16. In reporting on Semler's proposed settlement with the DOJ, *STAT News* noted UnitedHealth's prevalent use of QuantaFlo and the central role of the device in UnitedHealth's ability to extract money from diagnoses of PAD.[5]

---

[3] Press Release, UnitedHealth, *UnitedHealth Group Announces Leadership Transition* (May 13, 2025), available at https://tinyurl.com/24d3n2w9.

[4] Christopher Weaver & Anna Wilde Matthews, *UnitedHealth Group is Under Criminal Investigation for Possible Medicare Fraud*, Wall St. J. (May 15, 2025), available at https://tinyurl.com/5a7x2b7r.

[5] Lizzy Lawrence, *Device Maker that Helped UnitedHealth Collect Billions Offers to Settle Fraud Claims with DOJ*, STAT News (Apr. 16, 2025), available at https://tinyurl.com/yjt8tn5n.

4908-7357-1144.v1

## III.    LEGAL STANDARD

As a general matter, the PSLRA provides that discovery in private securities actions is to be stayed during the "pendency of any motion to dismiss."  15 U.S.C. §78u-4(b)(3)(B). However, the stay imposed by the PSLRA is not absolute, as courts in this District have noted – Congress has explicitly allowed for the stay to be lifted upon a showing that "particularized discovery is necessary to preserve evidence or to prevent undue prejudice." *Id.*; *see also In re Grand Casinos, Inc. Sec. Litig.*, 988 F. Supp. 1270, 1272 (D. Minn. 1997) (lifting the stay and noting that "[i]f . . . Congress had intended an absolute stay on discovery, then Congress would not have authorized a judicial reprieve from such a stay, when a reprieve is needed").  Thus, Congress recognizes that there are situations in which the purpose of the discovery stay – to "minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that . . . defendants will settle those actions rather than bear the high costs of discovery" – either does not apply or is outweighed by other considerations.  *In re Delphi Corp.*, 2007 WL 518626, at *4 (E.D. Mich. Feb. 15, 2007) (lifting the stay and noting "Congress, however, did not impose an absolute stay on discovery").

Courts have devised a three element standard that movants must satisfy in order to have the stay on discovery lifted:

> [I]t is necessary to show that: (1) "exceptional circumstances exist," such that allowing discovery would not violate the ethos of the PSLRA discovery stay and further that (2) "particularized discovery" is (3) necessary to either (a) "preserve evidence" or (b) "prevent undue prejudice" to a party.

*Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913, 915 (E.D. Wis. 2013).

- 6 -

4908-7357-1144.v1

Courts across the Country routinely find that this standard is met where, like here, the partial relief sought is the service of subpoenas requiring preservation of relevant documents, rather than the actual production of documents.  *See, e.g.*, *Grand Casinos*, 988 F. Supp. at 1272 (granting relief where "Plaintiffs request that we lift the automatic stay of discovery solely for the limited purpose of allowing them to serve Subpoenas *duces tecum* upon third-parties . . . to impose an affirmative duty on those persons to preserve the sought-after evidence until a ruling on the Defendants' Motion to Dismiss"); *In re Tyco Int'l, Ltd., Sec. Litig.*, 2000 WL 33654141, at \*5 (D.N.H. July 27, 2000) ("granting a plaintiff leave to issue subpoenas that give specified third parties notice of the action and impose upon them only a duty to preserve certain relevant evidence in their possession is consistent with the purposes underlying the PSLRA"); *In re Equifax Inc. Sec. Litig.*, 2018 WL 3023278, at \*7 (N.D. Ga. June 18, 2018) ("Consequently, the Court concludes that the Lead Plaintiff should be able to serve these necessary preservation subpoenas."); *N.Y. State Tchrs' Ret. Sys. v. Gen. Motors Co.*, 2015 WL 1565462, at \*6 (E.D. Mich. Apr. 8, 2015) (granting plaintiff's request because allowing plaintiff "to serve the proposed preservation subpoenas on the identified third parties will maintain the status quo until the Court rules on Defendants' pending motions to dismiss").

## IV.    ARGUMENT

### A.    The Fact that Plaintiff Simply Seeks Preservation – Not Production – of Documents from a Third Party Satisfies the "Exceptional Circumstances" Element

Courts find that the "exceptional circumstances" element is met where the nature of the relief requested is such that "the burdens of discovery are far less substantial" and

- 7 -

therefore "defendants in such circumstances may be much less likely to feel the pressure to engage in a settlement of meritless claims." *Assisted Living*, 943 F. Supp. 2d at 915. In other words, the exceptional circumstances requirement is met where the nature of the relief sought is "outside the intended ambit of the PSLRA discovery stay." *Id.*

There can be no serious argument as to whether such circumstances exist here where: (1) the relief requested is directed at a third party, rather than any defendant; and (2) the relief consists solely of the ***preservation***, rather than the actual production, of documents. Indeed, courts have found that such a request is expressly ***within*** Congress' intent, in instituting the PSLRA discovery stay, to "preserve the *status quo*, pending a judicial determination of the legal sufficiency of a private Federal securities class action." *Grand Casinos*, 988 F. Supp. at 1272; *see also Tyco Int'l.*, 2000 WL 33654141, at *5 ("granting a plaintiff leave to issue subpoenas that give specified third parties notice of the action and impose upon them only a duty to preserve certain relevant evidence in their possession is consistent with the purposes underlying the PSLRA").

**B.    Plaintiff's Request Is Sufficiently Particularized**

Requests for relief from the PSLRA stay are sufficiently particularized when they refer to a "'clearly defined universe of documents.'" *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004). Again, this requirement is easily met in the context of the specific relief requested here – the preservation of documents in the hands of a third party, as defined by a preservation subpoena.

As the court in *Tyco Int'l.* explained, the particularity requirement can be divided into "two dimensions": (1) particularity with respect to the recipient of the request; and (2)

- 8 -

particularity with respect to the "specific types of evidence that fall within its scope."  2000 WL 33654141, at *4.  Both are met here.  ***First***, Plaintiff has identified the "third parties that it wishes to serve with preservation subpoenas" – in this case consisting solely of Semler.  *Id.*

***Second***, Plaintiff has filed herewith a proposed preservation subpoena which "call[s] for the preservation of relevant evidence that is described with the requisite particularity" and identifies three well-defined categories of documents to be preserved, all of which are unquestionably related to its allegations.  *Id.* (noting that a subpoena "in terms comparable to the categories used by the parties in their negotiations regarding documents and data in the possession of defendants" is sufficient); *see also* Ex. A at 4-8.  Courts routinely find similar requests to be sufficiently particularized, especially in light of the fact that Semler is not being asked to produce any documents at this time.  *See Koncelik v. Savient Pharms., Inc.*, 2009 WL 2448029, at *1  (S.D.N.Y. Aug. 10, 2009) (finding plaintiffs' request sufficiently particularized because, "although the preservation subpoenas plaintiff expects to serve [on third parties] are broad, they require only the preservation of documents, not the documents' actual production"); *Gen. Motors*, 2015 WL 1565462, at *5-*6 (allowing for service of "proposed preservation subpoenas" to third parties and noting that "[c]ourts have granted motions to lift the PSLRA's discovery stay for this purpose"); *Grand Casinos*, 988 F. Supp. at 1273 (granting plaintiff's request to serve subpoenas *duces tecum* because "the 'discovery' is ***distinctly 'particularized'*** [and] it does no more than 'preserve evidence' in the care, custody or control of third-parties").

4908-7357-1144.v1

### C.     Plaintiff's Request Is Necessary to Preserve Evidence in the Possession of a Third Party Who May Not Have Notice of This Action

"Under the undue prejudice exception . . . sufficiently particularized discovery is permitted where the party seeking to lift the . . . automatic discovery stay makes 'a showing of improper or unfair detriment that need not reach the level of irreparable harm.'" *Ameriprise Fin. Servs., Inc. & Univision Commc'ns Inc.*, 2009 WL 10710599, at *2 (D. Minn. Jan. 9, 2009) (quoting *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 107 (D. Mass. 2002)).  Such a showing can be made where "documentary evidence of third-parties is not expressly subject to any preservation Order" which raises the possibility that, due to "ordinary document retention policies," relevant documentary evidence will be subject to deletion or otherwise disposed of "before the Court rules on [any] pending dispositive Motion." *Grand Casinos*, 988 F. Supp. at 1272.

The potential for prejudice here is squarely in line with this standard under which relief may be granted.  Semler is a third party that is not "expressly subject to any preservation order" with respect to this litigation. *Gen. Motors*, 2015 WL 1565462, at *5. Thus, Plaintiff has no assurance that any potentially relevant material[6] will not be destroyed in the ordinary course of business, which may or may not be protected by any preservation

---

[6]     The documents identified for preservation in Plaintiff's proposed subpoena (*see* Ex. A at 7-8) are unquestionably relevant to Plaintiff's claims against UnitedHealth because QuantaFlo – Semler's only product – was, according to Plaintiff's allegations, central in UnitedHealth's ability to conduct its fraudulent course of business. ¶¶79-89, 139, 142-143. Moreover, the Federal Rules of Civil Procedure "establishe[] a broad standard for discovery of information.  Under that rule, to be relevant and therefore discoverable, 'information need not be admissible,' but only '***reasonably calculated to lead to the discovery of admissible evidence***.'" *Savient Pharms.*, 2009 WL 2448029, at *2 (citing Fed. R. Civ. P. 26(b)(1)) (emphasis in original).

4908-7357-1144.v1

order to which Defendants are subject.[7] *See Savient Pharms.*, 2009 WL 2448029, at *2 ("Neither plaintiff nor the Court is required to accept at face value defendants' blithe assurances that nothing in the third-party companies' files can possibly be discoverable . . . ."). This is the only showing that Plaintiff is required to make to demonstrate the requisite prejudice – that Semler, a third party, may have discoverable information that could possibly be deleted in absence of the Plaintiff's requested relief. *See id.* ("[W]hat will or will not ultimately prove to be admissible cannot be established with any degree of certainty at this early stage in the litigation. The only thing that is certain is that without preservation subpoenas, the third party corporations in possession of potentially relevant information are free to destroy that information."). This showing has been made.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that its motion be granted, and that the PSLRA discovery stay be partially lifted so as to permit Plaintiff to serve its proposed preservation subpoena on non-party Semler.

DATED:  June 13, 2025                Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP

s/ Robert R. Henssler Jr.
ROBERT R. HENSSLER JR.

---

[7]    While Semler has disclosed that it has received several requests for information from the DOJ and is currently negotiating a settlement, the existence or extent of any document preservation protocols remain unknown. According to the Semler's SEC filings, the DOJ did not state an intention to pursue claims of wrongdoing against Semler prior to February 6, 2025.

- 11 -

4908-7357-1144.v1

DARREN J. ROBBINS (admitted *pro hac vice*)
SAM S. SHELDON (admitted *pro hac vice*)
LAURIE L. LARGENT (admitted *pro hac vice*)
ROBERT R. HENSSLER JR. (admitted *pro hac vice*)
JEFFREY J. STEIN (admitted *pro hac vice*)
JACK ABBEY GEPHART (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
darrenr@rgrdlaw.com
ssheldon@rgrdlaw.com
llargent@rgrdlaw.com
bhenssler@rgrdlaw.com
jstein@rgrdlaw.com
jgephart@rgrdlaw.com

Lead Counsel for Lead Plaintiff

TM SULLIVAN PLLC
TIM SULLIVAN, MN 391528
JAMES PORADEK, MN 290488 (OF COUNSEL)
225 South Sixth Street, Suite 3900
Minneapolis, MN  55402
Telephone:  773/919-8667
tim@tmsull.com
jporadek@tmsull.com

Local Counsel for Lead Plaintiff

- 12 -