**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) Civ. No. 24-cv-1743 (JMB/JFD) |
| Plaintiff, | ) ) <u>CLASS ACTION</u> ) ) LEAD PLAINTIFF'S MEMORANDUM |
| vs. | ) OF LAW IN SUPPORT OF ITS MOTION ) FOR LEAVE TO FILE A THIRD |
| UNITEDHEALTH GROUP INC., et al., | ) SUPPLEMENTAL CONSOLIDATED ) COMPLAINT FOR VIOLATIONS OF |
| Defendants. | ) THE FEDERAL SECURITIES LAWS ) ) |

4897-2877-9615.v1

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ..................................................................................................... 1

II.     SUMMARY OF THE RELEVANT ALLEGATIONS ........................................... 3

III.    RELEVANT PROCEDURAL HISTORY ................................................................ 5

IV.     RECENT DEVELOPMENTS AFTER PLAINTIFF REQUESTED LEAVE
        TO SUPPLEMENT ITS PLEADINGS AND FILE THE SSCC ON JUNE
        12, 2025 .................................................................................................................... 7

V.      ARGUMENT .......................................................................................................... 9

        A.      The New Allegations Arise from Events that Occurred After the
                Proposed SSCC Was Filed and Therefore Supplementing the SSCC
                Under Federal Rule of Civil Procedure 15(d) Is Proper ........................... 11

        B.      Plaintiff Has Not Engaged in Any Undue Delay ...................................... 12

        C.      There Is No Prejudice to Defendants ........................................................ 13

        D.      The Proposed TSCC Is Not Offered in Bad Faith .................................... 14

        E.      The Proposed TSCC Is Not Futile ............................................................ 15

VI.     CONCLUSION ...................................................................................................... 19

4897-2877-9615.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Andrade Garcia v. Columbia Med. Ctr. of Sherman*,
996 F. Supp. 605 (E.D. Tex. 1998) ............................................................. 13

*Bd. of Trs. of the Auto. Indus. Welfare Fund v. Groth
Oldsmobile/Chevrolet, Inc.*,
2010 WL 760452 (N.D. Cal. Mar. 4, 2010).................................................. 16

*Becker v Univ. of Neb. at Omaha*,
191 F.3d 904 (8th Cir. 1999) ..................................................................... 16

*Bell v. Allstate Life Ins. Co.*,
160 F.3d 452 (8th Cir. 1998) ..................................................................... 13

*Dale v. Tjeerdsma*,
2015 WL 1624854 (D.S.D. Apr. 13, 2015) ................................................... 9

*Dekker v. Cenlar FSB, CitiMortgage, Inc.*,
2021 WL 2950143 (D. Minn. July 14, 2021) ............................................... 10

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)................................................................................... 17

*ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*,
355 F. Supp. 3d 785 (D. Minn. 2019)......................................................... 14

*Fair Isaac Corp. v. Experian Info. Sols. Inc.*,
2009 WL 10677527 (D. Minn. Feb. 9, 2009) ....................................... 9, 10, 12

*Fed. Ins. Co. v. Sammons Fin. Grp., Inc.*,
320 F.R.D. 192 (S.D. Iowa 2013) ............................................................... 14

*In re Alphabet, Inc. Sec. Litig.*,
2023 WL 2277074 (N.D. Cal. Feb. 28, 2023) .............................................. 12

*In re Cassava Scis., Inc. Sec. Litig.*,
2025 WL 1465045 (W.D. Tex. May 21, 2025) .............................................. 12

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
403 F. Supp. 3d 712 (D. Minn. 2019).......................................................... 14

4897-2877-9615.v1

**Page**

*In re EpiPen Direct Purchaser Litig.*,
2021 WL 4892231 (D. Minn. Oct. 20, 2021) ........................................................ 12, 13

*In re Facebook, Inc. Sec. Litig.*,
87 F.4th 934 (9th. Cir. 2023) ................................................................................. 18

*In re Senior Cottages of Am., LLC*,
482 F.3d 997 (8th Cir. 2007) ................................................................................. 15

*In re St. Jude Med., Inc. Sec. Litig.*,
836 F. Supp. 2d 878 (D. Minn. 2011) ................................................................ 17, 18

*Jewish Fed'n of Lincoln, Inc. v. Rosenblatt*,
2018 WL 6171816 (D. Neb. Nov. 26, 2018) ........................................................ 13

*McAdams v. McCord*,
584 F.3d 1111 (8th Cir. 2009) ............................................................................... 17

*Netbula, LLC v. Distinct Corp.*,
212 F.R.D. 534 (N.D. Cal. 2003) ........................................................................... 16

*Noto v. 22nd Century Grp., Inc.*,
650 F. Supp. 3d 33 (W.D.N.Y. 2023) ..................................................................... 12

*Perez v. Target Corp.*,
2024 WL 4804656 (D. Minn. Nov. 15, 2024) (Bryan, J.) ..................................... 15

*Pinnacle Commc'ns Int'l, Inc. v. Am. Fam. Mortg. Corp.*,
2005 WL 8164742 (D. Minn. Feb. 16, 2005) ........................................................ 16

*Pub. Emps. Ret. Sys. of Miss., P.R.. Ret. Sys. v. Amedisys, Inc.*,
769 F.3d 313 (5th Cir. 2014) ................................................................................. 14

*Reuter v. Jax Ltd., Inc.*,
711 F.2d 918 (8th Cir. 2013) ................................................................................. 10

*Robinson v. Midwest Division-RMC, LLC*,
2020 WL 2151880 (W.D. Mo. May 5, 2020) ........................................................ 13

*Rose v. Lincoln Benefit Life Co.*,
2021 WL 3418551 (D. Minn. Aug. 5, 2021) ......................................................... 10

- iii -

4897-2877-9615.v1

**Page**

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
732 F. Supp. 3d 300 (S.D.N.Y. 2024)..............................................................18

*Sanders v. Clemco Indus.*,
823 F.2d 214 (8th Cir. 1987) .........................................................................13

*Schlief v. Nu-Source, Inc.*,
2011 WL 13140709 (D. Minn. Aug. 22, 2011) ..............................................15

*Singer v. Reali*,
883 F.3d 425 (4th Cir. 2018) .........................................................................14

*Slavkov v. Fast Water Heater Partners I, LP*,
2015 WL 5071933 (N.D. Cal. Aug. 27, 2015) ...............................................16

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) .......................................................................................16

*Tolentino v. Mossman*,
2008 WL 11518456 (N.D. Iowa Dec. 8, 2008) .........................................15, 16

*United States v. Vorachek*,
563 F.2d 884 (8th Cir. 1977) .....................................................................10, 11

*UnitedHealth Grp. Inc. v. Lexington Ins. Co.*,
2006 WL 8426436 (D. Minn. Apr. 18, 2006)..................................................10

*White v. Crosby, City of*,
2018 WL 11512339 (D.N.D. Nov. 20, 2018) ...................................................9

*Wizards of the Coast LLC v. Cryptozoic Ent. LLC*,
309 F.R.D. 645 (W.D. Wash. 2015) ...............................................................14

- iv -

**Page**

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 8(a)(2) ................................................................................................. 17
    Rule 12(b)(6) .............................................................................................. 15
    Rule 15 ......................................................................................................... 9
    Rule 15(a) ............................................................................................ 9, 10, 12
    Rule 15(a)(1)(B) .......................................................................................... 6
    Rule 15(a)(2) ............................................................................................... 12
    Rule 15(d) ............................................................................................ *passim*

**SECONDARY AUTHORITIES**

6A Charles A. Wright et al., *Federal Practice and Procedure* §1504 (3d ed. 2024) ......... 9

4897-2877-9615.v1

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 15(d), Lead Plaintiff California Public Employees' Retirement System ("CalPERS" or "Plaintiff") respectfully submits this memorandum of law in support of its Motion for Leave to File a Third Supplemental Consolidated Complaint for Violations of the Federal Securities Laws (the "Motion"). Rule 15(d) allows parties "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented" with leave of court. Fed. R. Civ. P. 15(d).

Plaintiff seeks leave to file a Third Supplemental Consolidated Complaint ("TSCC"), adding new allegations arising from multiple events that have occurred and become public since June 12, 2025, *i.e.*, when Plaintiff sought leave to file its Second Supplemental Consolidated Complaint for Violations of the Federal Securities Laws (ECF 131) ("SSCC").[1] Plaintiff seeks to supplement the SSCC by adding factual allegations regarding, among other things:

1.  a July 9, 2025 report by the *WSJ* reporting that the DOJ criminal probe of UnitedHealth's fraudulent Medicare Advantage practices involved interviews of specific former employees[2];

2.  a July 15, 2025 report by *Bloomberg* reporting that UnitedHealth used "portfolio refinement" transactions to "'mask[]'" its declining profits caused by the impacts of the V28 Medicare Advantage reforms;

---

[1]    Plaintiff sought leave to amend its pleadings and file the operative complaint (the SSCC) on June 12, 2025. ECF 117-122. The Court granted Plaintiff's motion to supplement on June 24, 2025 (ECF 130) and the SSCC was filed on that same day (ECF 131).

[2]    All capitalized terms not otherwise defined herein have the same meaning as set forth in the SSCC. Additionally, unless otherwise noted, all "¶__" or "¶¶__" citations herein are references to the SSCC, citations are omitted, and emphasis is added.

- 1 -

3.      the Company's July 24, 2025 surprising about-face admission that it was in fact facing both civil and criminal DOJ probes into its Medicare Advantage billing practices;

4.      the Company's July 29, 2025 disclosure that its earnings will plunge this year to below its previously lowered outlook due to operational shortfalls across its business, particularly its Medicare Advantage business and that it would halt $3.65 billion of "portfolio refinement" transactions previously included in 2025 financial guidance;

5.      the Company's July 31, 2025 announcement of the abrupt removal of its CFO John Rex;

6.      additional false and/or misleading statements relating to the July 2025 disclosures;

7.      an August 6, 2025 letter Senators Ron Wyden and Elizabeth Warren sent to the Company seeking documents and information about the partnership program it has with nursing homes across the country which aims to decrease necessary hospitalizations to increase profits;

8.      an August 11, 2025 report by *STAT News* reporting how the Company funded and wrote several medical studies that manipulated data in the Company's favor in order to protect its Medicare Advantage profits; and

9.      market commentary by financial analysts and media following this information.

A redline of the proposed TSCC showing the new, supplemental information, as well as a clean copy with supporting Exhibits 1-22 attached thereto, are attached as Exhibits A and B, respectively, to the concurrently filed Declaration of Tim Sullivan in Support of Lead Plaintiff's Motion for Leave to File a Third Supplemental Consolidated Complaint for Violations of the Federal Securities Laws ("Sullivan Declaration").[3]

---

[3]      *See* Ex. A (a redline copy of the proposed TSCC incorporating the new material findings and information); Ex. B (a clean copy of the proposed TSCC with exhibits attached, including a new investigative report as Exhibit 21).

4897-2877-9615.v1

Counsel for Plaintiff and Defendants have met and conferred regarding this Motion. Defendants received a redline copy of the proposed TSCC on August 22, 2025, and, after reviewing, will inform the Court as to their position regarding the Motion.

## II.   SUMMARY OF THE RELEVANT ALLEGATIONS

This securities fraud action alleges that UnitedHealth, one of the largest and most powerful healthcare conglomerates in the country, abused its size and power in order to defraud the American healthcare system and UnitedHealth investors, and as a result, investors were harmed as the truth about Defendants' misconduct was exposed to the market. The allegations relevant to this Motion are that Defendants were actively engaged in a scheme to inflate their Medicare Advantage profits by fraudulently diagnosing Medicare Advantage plan members with various risk-adjusting conditions that caused Medicare to overpay UnitedHealth for diagnoses that its patients did not actually have.  ¶¶65-183. Defendants' fraudulent scheme resulted in billions of dollars of improper revenue for the Company at the expense of the U.S. Government and, ultimately, American taxpayers.  *Id.* In 2021 alone, UnitedHealth received $8.7 billion in payments from the Federal Government for high-value diagnoses ***that no doctor treated*** – an amount equal to more than 50% of the Company's net income.  ¶111.  Plaintiff alleges that UnitedHealth, through its army of doctors, nurses, and risk adjustment personnel, engaged in a scheme whereby, unbeknown to investors, UnitedHealth encouraged, and in some cases coerced, unnecessary, unwanted, and nonexistent diagnoses to the charts of Medicare Advantage patients, thereby increasing the risk score for that patient and, in turn, increasing the amount that UnitedHealth would be paid by CMS.  ¶¶65-183.

- 3 -

The Company's fraud and unsustainable business practices connected to its Medicare Advantage business have begun to unravel, as its ability to perpetrate the Medicare Advantage scheme – which brought in billions of dollars each year – ran up against healthcare reforms (V28) designed specifically to put an end to such practices.  ¶¶126-129. On April 17, 2025, UnitedHealth slashed its 2025 earnings projections partially as a result of the financial impact the reforms had on the Medicare Advantage scheme.  ¶¶22, 246-247, 405-418.  Then, on May 13, 2025, UnitedHealth cancelled its 2025 earnings projections altogether and announced the sudden departure of the Company's CEO, John Rex.  ¶¶248-250, 419-426.  The next day the *WSJ* revealed that the Company was the target of yet another DOJ investigation, this time for ***criminal*** Medicare fraud.  ¶¶251-252, 427-437.

On July 15, 2025, *Bloomberg* reported that at FY 2024 year's end, with the 2023 Medicare Advantage regulatory changes curtailing UnitedHealth's ability to upcode, the Company had "'mask[ed]'" its declining profits with $3.3 billion of "portfolio refinement" transactions with private equity firms, including Warburg Pincus LLC and Kohlberg Kravis Roberts & Co. ("KKR & Co.").  Ex. A, ¶¶33, 267-269.  The "portfolio refinement" transactions with private equity firms Warburg Pincus and KKR & Co. included terms that could require UnitedHealth to buy the interests back at a higher price.  *Id.*, ¶¶271-272. According to multiple financial analysts covering UnitedHealth, these asset transactions amounted to "manufacturing earnings" and "financial engineering."  *Id.*, ¶278.  In the *Bloomberg* report, the Company denied any wrongdoing.

On July 24, 2025, the Company stunned investors yet again, admitting that it faced both civil and criminal DOJ probes into its Medicare Advantage billing practices.  Then, on

- 4 -

July 29, 2025, UnitedHealth further revealed its true financial condition, disclosing that its earnings will plunge this year to a level below even its lowered expectations – published just three months prior – due to operational shortfalls across its business, particularly its Medicare Advantage business. The Company also disclosed that that it would halt $3.65 billion of "portfolio refinement" transactions previously included in 2025 financial guidance. Two days later, on July 31, 2025, the Company suddenly announced that its long-time CFO, John Rex, would be stepping down, effective September 2, 2025. *See* ¶¶248-250, 419-426; Ex. A, ¶¶287, 433.

## III. RELEVANT PROCEDURAL HISTORY

CalPERS filed its Consolidated Complaint for Violations of the Federal Securities Laws on October 4, 2024 (ECF 45) (the "Consolidated Complaint"). Since filing the Consolidated Complaint, new developments, including at least two DOJ investigations into the Company, regulatory reports and findings concerning UnitedHealth's Medicare Advantage billing practices, a steady stream of reliable reporting from outlets such as the *WSJ* and *STAT News*, and the Company's own disclosures, have resulted in revelations that necessitated Plaintiff to update its allegations.

First, following the release of a report by the Office of Inspector General for the U.S. Department of Health and Human Services and two investigative reports by *STAT News* that exposed damning details of the Medicare Advantage scheme, Plaintiff moved to supplement its complaint on November 22, 2024. *See* ECF 46-51. The Court granted Plaintiff's request on November 25, 2024 (ECF 53), and Plaintiff filed its Supplemental Consolidated Complaint for Violations of the Federal Securities Laws the same day. ECF 54.

- 5 -

Then, on February 21, 2025, the *WSJ* brought to light that the DOJ launched a civil fraud investigation into UnitedHealth's Medicare billing practices, which will "examin[e] the [C]ompany's practices for recording diagnoses that trigger extra payments to its Medicare Advantage plans." ¶234. Following the release of this news, UnitedHealth's stock price significantly declined, tumbling $36 per share. ¶¶401-404. On March 21, 2025, within 21 days of Defendants' Motion to Dismiss Plaintiff's Supplemental Consolidated Complaint (ECF 90) ("Motion to Dismiss" or "Mtn."), Plaintiff filed its First Amended Consolidated Complaint for Violations of the Federal Securities Laws (ECF 97) (the "FAC") as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B).

Further, on April 17, 2025, blaming problems in the Company's Medicare Advantage segment, the Company announced that it would be slashing its earnings projections for the 2025 fiscal year. ¶¶246-247. On this news, the price of UnitedHealth stock plummeted by more than 20%. Plaintiff again moved to supplement its pleadings and filed its motion to supplement the FAC with the SFAC on May 5, 2025. ECF 102-107. Defendants did not oppose Plaintiff's proposed supplement (ECF 108) and the Court granted Plaintiff's motion to supplement the FAC on May 14, 2025 (ECF 109). The SFAC was filed the same day. ECF 110.

On May 13, 2025, the Company announced the abrupt "resignation" of CEO Witty while simultaneously disclosing that it was retracting its financial guidance it gave less than 30 days prior. ¶248. The next day, the *WSJ* published an article revealing that UnitedHealth was the subject of a DOJ criminal probe into its Medicare Advantage coding practices. ¶¶251-252. On this news, the price of UnitedHealth stock dropped by more than 30%.

- 6 -

4897-2877-9615.v1

¶¶419-437.  Plaintiff again moved to supplement its pleadings and filed its motion to supplement the SFAC with the SSCC on June 12, 2025.  ECF 117-122.  Defendants did not oppose Plaintiff's proposed supplement (ECF 129) and the Court granted Plaintiff's motion to supplement the SFAC on June 24, 2025 (ECF 130).  The SSCC was filed the same day.  ECF 131.

Plaintiff now seeks leave to supplement the SSCC as a result of the new critical facts that have recently come to light.

## IV.    RECENT DEVELOPMENTS AFTER PLAINTIFF REQUESTED LEAVE TO SUPPLEMENT ITS PLEADINGS AND FILE THE SSCC ON JUNE 12, 2025

On July 15, 2025, *Bloomberg* published an article reporting how UnitedHealth "[q]uietly [b]oosted [e]arnings" with what the Company euphemistically referred to as "portfolio refinement" transactions.  Ex. A, ¶¶33, 267-279.  The *Bloomberg* investigation revealed that at year-end 2024 the Medicare Advantage V28 restrictions on upcoding were hitting UnitedHealth's profits and the Company was short on its earnings targets and so orchestrated certain "portfolio refinement" transactions with private equity firms to "'mask[]'" its deteriorating financial condition.  *Id.*  The deals enabled UnitedHealth to book an additional $3.3 billion of annual profit, mostly in the Q4 2024.  *Id.*, ¶270.  Without the $3.3 billion gain at the very end of 2024, "the Company would have missed estimates for the first time in more than 15 years."  *Id.*, ¶273.  Multiple financial analysts recognized that these "portfolio refinement" transactions amounted to "financial engineering" and "earnings management" and were "'masking a weakness in the operations.'"  *Id.*, ¶¶35, 275, 279.

4897-2877-9615.v1

On July 24, 2025, the Company shocked investors yet again when it admitted it faced both civil and criminal DOJ probes into its Medicare Advantage billing practices. *Id.*, ¶¶280-281. The Company had previously denied the existence of these investigations. *Id.*, ¶326.

Then, on July 29, 2025, UnitedHealth further revealed its true financial condition, disclosing that its earnings will plunge this year to a level below even its lowered expectations – published just three months prior – due to operational shortfalls across its business, particularly its Medicare Advantage business. *Id.*, ¶¶282-286. The Company also disclosed that it would halt $3.65 billion of "portfolio refinement" transactions previously included in 2025 financial guidance. Two days later, on July 31, 2025, the Company made a sudden announcement that its CFO will be stepping down, effective September 2, 2025. *See id.*, ¶287.

On August 6, 2025, Senators Ron Wyden and Elizabeth Warren sent the Company a letter seeking documents and information about the partnership program it has with nursing homes across the country which aims to decrease hospitalizations and thereby coverage expenses. *Id.*, ¶¶425-426. According to the Senators' letter, UnitedHealth "appears to be prioritizing its bottom line at the expense of the health and safety of nursing home residents." *Id.*, ¶425.

Finally, on August 11, 2025, *STAT News* reported that UnitedHealth funded and wrote several studies that manipulated data in the Company's favor in order to protect its Medicare Advantage profits. *Id.*, ¶¶427-428. For example, the *STAT News* article highlighted a January 2025 study Optum published in JAMA Network Open that claimed UnitedHealth's

- 8 -

Medicare Advantage model produced better outcomes for seniors. *Id.*, ¶427. Independent reviewers concluded its findings were statistical mirages driven by flawed methods and biased patient selection. *Id.*

## V.    ARGUMENT

Rule 15(d) allows parties "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented" with leave of court. Fed. R. Civ. P. 15(d). Rule 15(d) provides in part: "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Id.* "The purpose of subdivision (d) is to promote as complete an adjudication of the dispute between the parties as is possible." 6A Charles A. Wright et al., *Federal Practice and Procedure* §1504 (3d ed. 2024).

"'Leave to file a supplemental complaint under Rule 15(d) rests with the court's discretion and should be freely granted'" barring any "'undue prejudice or delay.'" *White v. Crosby, City of*, 2018 WL 11512339, at *2 (D.N.D. Nov. 20, 2018) (quoting *Dale v. Tjeerdsma*, 2015 WL 1624854, at *2 (D.S.D. Apr. 13, 2015)). This discretion is "subject to the same standard" as motions for leave to amend under Rule 15(a). *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 2009 WL 10677527, at *14 n.7 (D. Minn. Feb. 9, 2009) (collecting cases finding that motions to amend under Rule 15(a) and motions to supplement under Rule 15(d) are subject to the same standard). Thus, in keeping "'with the overarching flexibility of Rule 15, courts customarily have treated requests to supplement under Rule 15(d) liberally. This liberality is reminiscent of the way in which courts have treated requests to

- 9 -

amend under Rule 15(a).'" *Dekker v. Cenlar FSB, CitiMortgage, Inc.*, 2021 WL 2950143, at *1 (D. Minn. July 14, 2021).

Importantly, while the standard for requests for leave to supplement under Rule 15(d) is virtually identical as that for leave to amend under Rule 15(a), the content of such requests is different. "'An amended pleading is designed to include matters occurring before the filing of the bill but either overlooked or not known at the time. A supplemental pleading, however, is designed to cover matters subsequently occurring but pertaining to the original cause.'" *United States v. Vorachek*, 563 F.2d 884, 886 (8th Cir. 1977); *see also UnitedHealth Grp. Inc. v. Lexington Ins. Co.*, 2006 WL 8426436, at *2 (D. Minn. Apr. 18, 2006) (same). This is consistent with the plain language of the rule itself. *See* Fed. R. Civ. P. 15(d).

Only "'if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment'" have courts generally denied leave to supplement. *Rose v. Lincoln Benefit Life Co.*, 2021 WL 3418551, at *1 (D. Minn. Aug. 5, 2021) (quoting *Reuter v. Jax Ltd., Inc.*, 711 F.2d 918, 922 (8th Cir. 2013)) (granting leave to supplement, and noting that leave to supplement is subject to the same standard as leave to amend); *see also Fair Isaac*, 2009 WL 10677527, at *14 n.7 (collecting cases stating that leave to amend and leave to supplement are subject to the same standard). As discussed below, because none of these circumstances apply here, Plaintiff's request should be granted.

4897-2877-9615.v1

A.    **The New Allegations Arise from Events that Occurred After the Proposed SSCC Was Filed and Therefore Supplementing the SSCC Under Federal Rule of Civil Procedure 15(d) Is Proper**

"'A supplemental pleading . . . is designed to cover matters subsequently occurring but pertaining to the original cause.'" *Vorachek*, 563 F.2d at 886.

In keeping with Rule 15(d), the new allegations arise from events and information that emerged after Plaintiff first filed the proposed SSCC with the Court in conjunction with its motion for leave to supplement prior pleadings on June 12, 2025. ECF 117-122. As discussed above in §IV., these new allegations include: (1) a July 9, 2025 report by the *WSJ* that the DOJ criminal probe of UnitedHealth's fraudulent Medicare Advantage practices involved interviews of specific former employees; (2) a July 15, 2025 *Bloomberg* report that UnitedHealth used "portfolio refinement" transactions to "'mask[]'" their declining profits caused by the impacts of the V28 Medicare reforms and the Company's denial; (3) the Company's July 24, 2025 surprising about face admission that it was facing both civil and criminal DOJ probes into its Medicare Advantage billing practices and the resulting stock price decline; (4) the Company's July 29, 2025, disclosure that its earnings will plunge this year to a level below even its lowered expectations due to operational shortfalls across its businesses, particularly its Medicare Advantage business, and that it was halting $3.65 billion of "portfolio refinement" transactions and the resulting decline in the price of UnitedHealth common stock; (5) the Company's July 31, 2025 sudden announcement that its long-time CFO was stepping down; (6) additional false and misleading statements arising from the July 2025 disclosures; (7) an August 6, 2025 letter Senators Ron Wyden and Elizabeth Warren sent to the Company seeking documents and information about the

- 11 -

partnership program it has with nursing homes across the country, which aims to decrease hospitalizations to increase profits; (8) an August 11, 2025 report by *STAT News* reporting how the Company funded and wrote several medical studies that manipulated data in the Company's favor in order to protect its Medicare Advantage profits; and (9) market commentary by financial analysts and media following these disclosures. Ex. A, ¶¶490-502. *See, e.g.*, *In re Alphabet, Inc. Sec. Litig.*, 2023 WL 2277074, at *2-*4 (N.D. Cal. Feb. 28, 2023) (granting motion to supplement where plaintiff sought to add an additional corrective disclosure that occurred following the filing of the prior pleadings); *see also In re Cassava Scis., Inc. Sec. Litig.*, 2025 WL 1465045, at *2-*4 (W.D. Tex. May 21, 2025) (same).[4]

### B.  Plaintiff Has Not Engaged in Any Undue Delay

Undue delay exists where the moving party has engaged in "dilatory tactics." *In re EpiPen Direct Purchaser Litig.*, 2021 WL 4892231, at *3-*4 (D. Minn. Oct. 20, 2021). When determining whether a party moving for leave to amend has engaged in delay that would justify denial of leave under Federal Rule of Civil Procedure 15(a)(2), courts distinguish between "*mere* delay (which would be no bar to the Court granting the motion to amend) [and] . . . *undue* delay (which might be a bar)." *Id.* at *3 (emphasis in original).

---

[4]  It is true that the TSCC adds several false and misleading statements that predate the SSCC, and which were made on January 16, 2025 (Ex. A, ¶323), February 27, 2025 (*id.*, ¶327), and April 17, 2025 (*id.*, ¶¶328-329). But, the addition of these statements is proper in the context of Plaintiff's Motion, as opposed to a motion to amend under Federal Rule of Civil Procedure 15(a), as their actionability was revealed by the July 2025 disclosures – well after the filing of the SSCC. *Id.*, ¶¶33, 267-279. *See Noto v. 22nd Century Grp., Inc.*, 650 F. Supp. 3d 33, 51-52 (W.D.N.Y. 2023) (finding that plaintiffs' allegations of loss causation with respect to certain statements were "sufficiently pled" following "*later revealed*" information contained in short seller reports). And, in any case, the standard for granting motions to supplement pursuant to Rule 15(d) is the same as for granting leave to amend under Rule 15(a). *See Experian Info.*, 2009 WL 10677527, at *14 n.7.

4897-2877-9615.v1

Here, Plaintiff has not engaged in any delay, undue or otherwise. There is not even a deadline in place for when Plaintiff must file an amendment. *See id.* at \*4 (noting that courts have found no undue delay "even though the party filed the motion on both the last day allowed in the scheduling order and on the day that discovery closed") (citing *Andrade Garcia v. Columbia Med. Ctr. of Sherman*, 996 F. Supp. 605, 609 (E.D. Tex. 1998)). Moreover, Plaintiff's Motion comes shortly after learning of the new facts, which were made public as recently as August 11, 2025. *See generally* Ex. A.

## C.    There Is No Prejudice to Defendants

"[E]ven if the court [determines that there is] . . . undue delay, '[d]elay alone is insufficient justification for denying a motion to amend; ***prejudice to the nonmovant must also be shown***.'" *EpiPen*, 2021 WL 4892231, at \*5 (quoting *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998)). "The burden of proof to show prejudice rests with the party opposing [the] amendment." *Robinson v. Midwest Division-RMC, LLC*, 2020 WL 2151880, at \*1 (W.D. Mo. May 5, 2020) (citing *Sanders v. Clemco Indus.*, 823 F.2d 214, 217 (8th Cir. 1987)).

Defendants, in order to bear their burden, must demonstrate that the proposed supplement would result in their expenditure of "significant additional resources on discovery and trial preparation, or significantly delay resolving the dispute." *Jewish Fed'n of Lincoln, Inc. v. Rosenblatt*, 2018 WL 6171816, at \*1 (D. Neb. Nov. 26, 2018); *see also Bell*, 160 F.3d at 454 ("[W]hen ***late tendered*** amendments involve new theories of recovery and impose additional discovery requirements, courts are less likely to find an abuse of discretion [in denying leave to amend] due to the prejudice involved."). This, Defendants

- 13 -

cannot do because none of these potential sources of prejudice apply here. Thus, "any concerns related to either undue delay or unfair prejudice" are nonexistent. *Fed. Ins. Co. v. Sammons Fin. Grp., Inc.*, 320 F.R.D. 192, 197-98 (S.D. Iowa 2013) (granting leave to amend where the nonmoving party "will have ample opportunity to conduct appropriate discovery and assert its defenses" as to the proposed amendment).

### D.    The Proposed TSCC Is Not Offered in Bad Faith

"[B]ad faith requires more than mere negligence or bad judgment; it is the 'conscious doing of a wrong because of dishonest purpose or moral obliquity.'" *ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*, 355 F. Supp. 3d 785, 791 (D. Minn. 2019) (quoting *Wizards of the Coast LLC v. Cryptozoic Ent. LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015)). "Given the liberal policy favoring amendment . . . the burden of demonstrating bad faith falls upon the party opposing amendment." *ecoNugenics*, 355 F. Supp. 3d at 791.

Defendants cannot carry this burden. Plaintiff proposes the supplement to incorporate information revealed after Plaintiff sought leave to file the SSCC (and related-information relevant to the new information), including information which bolsters Plaintiff's allegations in light of arguments made by Defendants in their Motion to Dismiss. *See supra* at 8-9; Mtn. at 6-10. For example, Defendants argued that the disclosure of a DOJ investigation cannot satisfy the loss causation pleading requirement. Mtn. at 8-10.[5] The proposed TSCC alleges,

---

[5]    Defendants are mistaken about the law on this issue. *See, e.g.*, *In re CenturyLink Sales Pracs. & Sec. Litig.*, 403 F. Supp. 3d 712, 735 (D. Minn. 2019) (corrective disclosures can come in many forms); *Singer v. Reali*, 883 F.3d 425, 446-47 (4th Cir. 2018) (the disclosure of a government investigation, including what was being investigated, satisfied loss causation); *Pub. Emps. Ret. Sys. of Miss., P.R.. Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313,

- 14 -

among other things, an additional partial corrective disclosure – the Company's July 29, 2025 disclosure of UnitedHealth's true financial condition (further slashing its financial guidance due to operational shortfalls across its business, particularly its Medicare Advantage business and halting use of $3.65 billion of so-called "portfolio management" transactions) (Ex. A, ¶¶494-502) – which further support Plaintiff's loss causation allegations.  Notably, such a purpose was recently endorsed by Judge Bryan in a securities action.  *See Perez v. Target Corp.*, 2024 WL 4804656, at *14 (D. Minn. Nov. 15, 2024) ("Plaintiffs also could have filed a motion for leave to amend, pursuant to [Local] Rule 15.1(b), upon reviewing the arguments Defendants raised in their motion to dismiss . . . .") (Bryan, J.).

### E.    The Proposed TSCC Is Not Futile

The standard for determining the legal sufficiency of a proposed amendment, or supplement in this case, is the same as that used for evaluating a pleading under Federal Rule of Civil Procedure 12(b)(6).  *See Schlief v. Nu-Source, Inc.*, 2011 WL 13140709, at *1 (D. Minn. Aug. 22, 2011); *see also Tolentino v. Mossman*, 2008 WL 11518456, at *2 (N.D. Iowa Dec. 8, 2008) ("When a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amendment could not withstand a motion for judgment on the pleadings.") (citing *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007)).  Under this standard, a court must "consider the complaint in its entirety," "accept all factual allegations . . . as true," and construe those allegations in the light most

___

323-25 (5th Cir. 2014) (viewed holistically, disclosure of various government investigations adequately pleads loss causation).

- 15 -

favorable to the plaintiff. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007). Thus, supplementing under Rule 15(d) should be allowed "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of its claim that would entitle it to relief." *Pinnacle Commc'ns Int'l, Inc. v. Am. Fam. Mortg. Corp.*, 2005 WL 8164742, at *2 (D. Minn. Feb. 16, 2005); *see also Becker v Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999) ("a motion to amend should be denied on the merits '***only*** if it asserts ***clearly frivolous*** claims or defenses'"). "Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003); *see also Tolentino*, 2008 WL 11518456, at *2 ("Each of the Defendants who have filed a resistance to the instant motion [to file a third amended complaint] have also filed motions to dismiss the first amended complaint. Those motions to dismiss are pending before Judge Edward J. McManus. The undersigned Magistrate Judge concludes that the issue of whether the amended claims state a cause of action is properly considered by Judge McManus in the various motions to dismiss. That is, under the procedural circumstances presented here, ***the Court concludes that the alleged futility of the amendment should be addressed as part of the motions to dismiss***."); *Bd. of Trs. of the Auto. Indus. Welfare Fund v. Groth Oldsmobile/Chevrolet, Inc.*, 2010 WL 760452, at *3 (N.D. Cal. Mar. 4, 2010) ("In general, the futility of an amendment is better tested in a motion to dismiss for failure to state a claim or a summary judgment motion."); *Slavkov v. Fast Water Heater Partners I, LP*, 2015 WL 5071933, at *2 (N.D. Cal. Aug. 27, 2015) (finding no futility, and holding that ""'[t]he merits or facts of a controversy are not properly decided in a motion for leave to

- 16 -

amend and should instead be attacked by a motion to dismiss for failure to state a claim or for summary judgment"'"").

Futility is not an issue here because the supplemental allegations adequately allege loss causation as to the new partial corrective disclosures on July 24, 2025 and July 29, 2025. "'To adequately plead loss causation, the complaint must state facts showing a causal connection between the defendant's misstatements and the plaintiff's losses.'" *In re St. Jude Med., Inc. Sec. Litig.*, 836 F. Supp. 2d 878, 908 (D. Minn. 2011) (quoting *McAdams v. McCord*, 584 F.3d 1111, 1114 (8th Cir. 2009)). "The pleading of loss causation is subject only to 'the simple test' of Rule 8(a)(2)'s requirement of a short and plain statement of the claim." *St. Jude*, 836 F. Supp. 2d at 908 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)).

There can be no dispute that the July 24, 2025, announcement by the Company that UnitedHealth is the subject of DOJ criminal and civil fraud investigations into their Medicare Advantage coding practices is adequately pled as a partial corrective disclosure. That disclosure consisted of the Company's admission that the DOJ has opened a criminal investigation into the Company related to the very conduct that Plaintiff alleges Defendants concealed from investors – namely that the Company was perpetrating a fraudulent scheme in its Medicare Advantage business. *See* Ex. A, ¶¶490-493. This admission came as a surprise to investors as just two months earlier the Company had denied any DOJ investigation. *Id.*, ¶326.

Also, there can be no dispute that the Company's July 29, 2025 disclosure, further slashing its financial guidance due to operational shortfalls across its business, particularly

- 17 -

its Medicare Advantage business, and that it was halting $3.65 billion of planned "portfolio refinement" transactions, is sufficiently pled as a corrective disclosure. *Id.*, ¶¶494-502. The July 29, 2025 announcement caused an immediate share price decline of over 7%. *Id.*, ¶500; *see St. Jude*, 836 F. Supp. 2d at 908-09 (finding that a reduction in guidance was sufficiently pled as a corrective disclosure); *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 325 (S.D.N.Y. 2024) ("Here, Plaintiffs have plausibly linked each disappointing earnings report to the risks concealed by the fraud. . . .  The complaint has specifically alleged a connection between that scheme and each wave of disappointing earnings."); *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 955-57 (9th. Cir. 2023) (same).

Lastly, because the supplemental allegations bolster and expand on Plaintiff's current scienter allegations, futility is not an issue.  Indeed, the new facts add to the already strong inference of scienter: (1) the Company reversing course and admitting to the criminal investigation; (2) the disclosure that due to the impacts of the Medicare Advantage V28 reforms restricting its upcoding, UnitedHealth was "manufacturing earnings" via so-called "portfolio management" transactions at year-end 2024 "'masking'" its deteriorating financial condition; (3) the disclosure that UnitedHealth included – but concealed – that $3.65 billion in its 2025 financial guidance was made up of these "portfolio management" transactions and it was halting use of such transactions; (4) the July 29, 2025 further revelation of the Company's deteriorating financial condition as a result of problems in its Medicare Advantage business; (5) the July 31, 2025 sudden announcement that its long-time CFO is stepping down, effective September 2, 2025; (6) the fact of yet another Congressional investigation into UnitedHealth's Medicare Advantage scheme; and (7) the fact that the

- 18 -

4897-2877-9615.v1

Company manipulated data in medical studies to protect its Medicare Advantage business. Ex. A, ¶¶267-279, 280-287, 425-428.

## VI.   CONCLUSION

For all these reasons, Plaintiff respectfully requests that the Court grant it leave to file the clean version of the proposed TSCC attached as Ex. B to the concurrently filed Sullivan Declaration, including Exhibits 1-22 attached thereto.

DATED:  August 25, 2025          Respectfully submitted,

TM SULLIVAN PLLC
TIM SULLIVAN, MN 391528


s/ Tim Sullivan
TIM SULLIVAN

225 South Sixth Street, Suite 3900
Minneapolis, MN  55402
Telephone:  773/919-8667
tim@tmsull.com

Local Counsel for Lead Plaintiff

4897-2877-9615.v1

ROBBINS GELLER RUDMAN & DOWD LLP
DARREN J. ROBBINS (admitted *pro hac vice*)
SAM S. SHELDON (admitted *pro hac vice*)
LAURIE L. LARGENT (admitted *pro hac vice*)
ROBERT R. HENSSLER JR. (admitted *pro hac vice*)
MATTHEW I. ALPERT (admitted *pro hac vice*)
JEFFREY J. STEIN (admitted *pro hac vice*)
JACK ABBEY GEPHART (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
darrenr@rgrdlaw.com
ssheldon@rgrdlaw.com
llargent@rgrdlaw.com
bhenssler@rgrdlaw.com
malpert@rgrdlaw.com
jstein@rgrdlaw.com
jgephart@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 20 -

4897-2877-9615.v1