## TM SULLIVAN PLLC

December 5, 2025

**VIA ECF**

The Honorable Jeffrey M. Bryan
United States District Court
316 North Robert Street, Suite 100
St. Paul, MN  55101

**Re:**    *California Public Employees' Retirement System v.*
          *UnitedHealth Group Inc., et al.*, No. 24-cv-1743 (D. Minn.)

Dear Judge Bryan:

The Eleventh Circuit recently issued *Jastram v. NextEra Energy, Inc.*, __ F.4th __, 2025 WL 3293701 (11th Cir. Nov. 26, 2025), reversing dismissal for failure to plead loss causation and rejecting the exact standard Defendants advocate: that corrective disclosures must explicitly reveal prior statements were false.[1]  The parallels are striking.  Like *NextEra*'s CEO, UnitedHealth's former CEO Andrew Witty departed suddenly with an explanation analysts rejected.  Like *NextEra*, UnitedHealth disclosed problems without admitting fraud.  And, like *NextEra*, analysts connected the disclosures to the underlying scheme – which *NextEra* holds is dispositive.[2]

***NextEra* Rejects Defendants' "Reveal Falsity" Standard**.  In their motion to dismiss, Defendants demand corrective disclosures that "revealed the falsity of the alleged misstatements." ECF 175 at 3-4, 46; ECF 182 at 2, 22.  The Eleventh Circuit confronted and rejected this reasoning, holding it "misapprehends how markets respond to information."  *NextEra*, 2025 WL 3293701, at *11.

The court explained: "***Companies are not usually keen to draw attention to their earlier fraud, but investors do not need handholding to connect the dots***."  *Id.* (emphasis added). Moreover, "requiring a corrective disclosure to decisively and unequivocally debunk the earlier fraud overstates the role of loss causation – especially at the pleading stage."  *Id.* at *12.  The proper inquiry is "whether enough truth has saturated the market to make investors second-guess the earlier fraud."  *Id.* at *11.

**Executive Departure Is Corrective**.  *NextEra* held that an executive's unexpected departure constitutes a corrective disclosure – even when the executive offers innocent explanations.  The court emphasized: "Even if [the CEO] did *ex post* state that his retirement had always been planned, ***we should not assume investors would believe him***."  *Id.* at *13 (emphasis

---

[1]    "Defendants" are UnitedHealth Group, Inc., Andrew Witty, Stephen Hemsley, and Brian Thompson.

[2]    *NextEra* is particularly instructive here because Defendants invoke Eleventh Circuit precedent (*Meyer v. Greene*, 710 F.3d 1189 (11th Cir. 2013) and *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1246 (11th Cir. 2023)), as the foundation for their loss causation arguments.  ECF 175 at 15, 19, 47-48, 50.

4920-9611-3021.v2

added).  Indeed, "at least one investment analyst reported 'investors weren't buying' it."  *Id.*; *see also id.* ("timing, too, sent a signal to the market").

Here, the timing is even more damning:

- **April 17**: UnitedHealth slashed earnings per share estimates and Witty assured investors "we can fix in '25" (ECF 158, ¶¶254, 328-329);
- **May 13**: Witty unexpectedly leaves for "personal reasons," "effective immediately"; and guidance suspended (*id.*, ¶¶256-259, 463-470);
- **May 14**: *The Wall Street Journal* reveals Department of Justice investigation for "criminal Medicare fraud" (*id.*, ¶¶259, 418);
- **May 14-15**: Prominent financial outlets reject "personal reasons" cover story (*id.*, ¶¶27, 416, 475);
- **June 2**: UnitedHealth "cancelled" Witty's previously "granted" stock units and announced an "independent" review of its coding practices (¶420).

**Analyst Reports Are Dispositive**.  *NextEra* holds: "Where a court is presented with well-pleaded facts that the investing public related the corrective disclosure to the earlier misinformation, it is improper for such court to substitute its own opinion."  2025 WL 3293701, at *14.

Plaintiff alleges precisely this connection.  Analysts confirmed the fraud stating UnitedHealth "probably was overearning, overcharging, upcoding for a period of time," with reduced profits reflecting "Department of Justice scrutiny."  ECF 158, ¶¶451-452.  Others explained: "Their margins have depended probably more than is good for them on upcoding." *Id.*, ¶¶459, 467.  Still others tied the $11 billion V28 admission, 50% guidance collapse, and cover-up transaction abandonment to the fraud: Hemsley needed to terminate $3.65 billion in "earnings management." *Id.*, ¶¶282-286, 498-499.[3]

*NextEra* holds these allegations "show that those with financial acumen made the connection at the heart of the loss causation inquiry" and are therefore dispositive at the pleading stage.  2025 WL 3293701, at *14.

Sincerely,

s/ Timothy M. Sullivan

Timothy M. Sullivan

---

[3]  "V28" was the new (Version 28 model) risk adjustment payment system implemented by Centers for Medicare & Medicaid Services in 2023 to address abusive coding practices (*see id.*, ¶¶132-135).

3900 Capella Tower | 225 South Sixth Street | Minneapolis, MN 55402